CASE 59—ACTION FOR LEGAL SERVICES—NOV. 28.

# Louisville, N. A. & C. Ry. Co. v. Helm & Bruce.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. AFFIRMED.

ACCORD AND SATISFACTION—CONSIDERATION FOR RELEASE OF CLAIM.

Held: Where a debtor, in tendering the amount of a demand which had been liquidated by agreement, attached the condition that the creditors should accept the amount in satisfaction of all claims against him, the creditors, by retaining the money, did not preclude themselves from asserting other claims, as the payment of a liquidated demand is no consideration for the release of other demands.

PIRTLE & TRABUE, FOR APPELLANT.

## AUTHORITIES RELIED UPON.

When an amount is tendered in full of all claims which exist at the time of the tender, the party to whom the tender is made must either accept or refuse the tender as made. If he accepts the amount, but at the same time refuses or attempts to refuse the tender his refusal amounts to nothing. The party to whom the tender is made has no alternative but to refuse or accept it upon such condition, and if he takes it, no protest or declaration made by him at the time can affect the case. Bull v. Bull, 43 Conn., 455; Burdell v. Bissell, 6 Col., 162; Dentman v. Kirkpatrick, 46 Mo. App., 624; Fuller v. Kemp, 138 N. Y., 231; Preston v. Grant, 34 Vt., 201; Massoig v. Tomlinson, 148 N. Y., 326; same case, 51 Am. St. Rep., 695. Additional authorities: Fuller v. Kemp, 138 N. Y., 231; 20 L. R. A., 785 and 795; Ostrander v. Scott, 161 Ill., 339; Hayes v. M. L. I. Co., 125 Ill., 626.

HARRIS & MARSHALL, ATTORNEYS FOR APPELLEES.

The judgment should be affirmed for the following reasons:

*First.* Because the issue is one of fact depending on the evidence of two witnesses who flatly contradict each other, and the finding of the trial court should be given the weight accorded to the verdict of a jury.

Louisville N. A. & C. Ry. Co. v. Helm & Bruce.

*Second.* Helm's version of the agreement is confirmed by the inherent probabilities of the case and by the entire correspondence.

*Third.* It is contended by counsel for appellant that "when an amount is tendered in full of all claims which exist at the time of the tender, the party to whom the tender is made must either accept or refuse the tender as made."

The authorities cited do not bear out the contention unless we add the important word, "unliquidated" The rule is, if one owes me two liquidated demands of $50 each, and sends me $50 in full for both, I am not bound to return the money, but may apply it to one, and sue him on the other. Massoig v. Tomlinson, 31 Am. State Rep., p. 3; Bull v. Bull, 43 Conn., 455; Burdell v. Bissell, 6 Col., 165; Deutman v. Kilpatrick, 46 Mo. App., 629.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

In disposing of this case, the chancellor delivered the following opinion: "The plaintiffs sue the defendant for $1,102.95 for legal services rendered in six specific cases. For several years prior to 1894 the plaintiffs were local counsel at Louisville for the defendant. During that period the principal litigation of the defendant at this point consisted of what is known as the 'Beattyville Bond Cases,' though there were other smaller cases usual to the railroad business. The defendant company had by indorsement guaranteed the payment of the bonds, and interest of the R., N. & I. R. R., commonly called the 'Beattyville Road,' of the face value of $1,185,000, and afterwards, upon a change of its directory, had repudiated the indorsement. The defendant instituted suit in the Federal Court at Louisville in April, 1890, against the bondholders, for the purpose of having the indorsement upon the bonds canceled. About the same time quite a number of bondholders sued the defendant company in the State courts at Louisville for interest represented by past-due coupons of the Beat-

tyville bonds, which interest had been guaranteed by the
defendant.   The plaintiffs represented the defendant in all
this litigation, although other counsel aided them in cer-
tain stages of it.   In 1894 the Federal Court case was de-
cided in favor of the defendant, and the indorsement upon
the bonds was canceled, and nineteen of the bondholders
took an appeal to the circuit court of appeals.   In October,
1894, the president of the defendant wrote to the general
manager of the defendant as follows:  'It has just occur-
red to me that, inasmuch as the Beattyville cases are fin-
ished in the trial courts, it would be well to have Messrs.
Helm & Bruce render their bill for services in those cases
to the date of the entry of the judgment in the trial court.
I assume that appeals will be taken, and, of course, all
those cases will have to be looked after in the appeal court.'
Consequently, on October 27, 1894, the general counsel of
the defendant wrote to plaintiffs, quoting the above lan-
guage of the president, and asking plaintiffs to send in
their bill.   After some intervening correspondence, and a
renewed request to comply with the president's request,
the plaintiffs presented their bill on November 6, 1894,
for $8,000, credited by $3,150, leaving unpaid a balance of
$4,850.   The bill was explained at length on its face, and
related solely to the Beattyville bond cases.   Defendant
thought the charge excessive, and a rapid interchange of
letters in regard to the fee for services passed between the
plaintiffs and Mr. Kretzinger, the general counsel for the
defendant.   This resulted in Mr. Kretzinger coming to
Louisville about the 28th or 29th of November of that year.
Mr. Kretzinger and Mr. Helm had an interview of some fif-
teen minutes in the court room, which resulted in Mr.
Kretzinger's offering to settle the bill for $3,500, which offer
Mr. Helm accepted, after some hesitation.   Mr. Kretzinger

returned to Chicago that night, and on December 1st he mailed plaintiffs a check and voucher for $3,500. The voucher, however, not only recited that the $3,500 was in payment for services in the Beattyville bond cases, but also recited at the bottom that it was also in full payment of all claims for legal services rendered to the defendant to that date. Plaintiffs treating this last recital as a mistake, and as not according to the settlement between Mr. Helm and Mr. Kretzinger, Mr. Helm erased it, signed the voucher, and retained the check. Mr. Kretzinger immediately protested that the voucher recited the agreement, which was, as he claimed, to settle all claims of every kind for the $3,500, while Mr. Helm claimed that the agreement was that the settlement embraced only the Beattyville bond cases. The bill sued on here is for the services admitted to have been rendered by plaintiffs in other cases. The reasonableness of the fees sued for is put in issue by the answer, but defendant has taken no testimony upon that point to meet the testimony of Mr. Helm. In fact, defendant has not urged the question of the value of the services, and practically concedes that point. This is not a case of accord and satisfaction. The plaintiff's claim, as presented for $4,850, was an unliquidated claim, and did not embrace the claim now sued on. It was liquidated at $3,500. The only question to be decided is, did the $3,500 liquidation and settlement include the claim now sued on? Mr. Kretzinger is positive that it did, while Mr. Helm is equally as positive. They are the only witnesses in the case. All the communications between them, except the interview in the court house on November 28 or 29, 1894, are in the shape of letters. It can not be questioned that all the letters upon either side, prior to the court-house interview, relate solely to the Beattyville bond cases. No other case or

class of cases is anywhere mentioned.    Mr. Kretzinger
came to Louisville for the purpose of settling the matters
in controversy.  What was in controversy?  The correspond-
ence clearly shows that the fee in the Beattyville bond
cases was the only matter under discussion. But Mr. Kretz-
inger testifies that while it is true he started to Louisville
for that purpose only, he had a conversation with Mr. Mc-
Doel, the general manager of the defendant company, while
on the train coming to Louisville and that Mr. McDoel told
him that it would be a good idea to close up all fee mat-
ters with plaintiffs; not only the fees in the Beattyville bond
cases, but fees in all cases in the hands of plaintiffs.    Mr.
Kretzinger says he accordingly broached the settlement
the next day in his conversation with Mr. Helm, while Mr.
Helm says Mr. Kretzinger said nothing about other cases
or fees, but confined himself to the ground covered in the
previous correspondence—fees in the Beattyville bond
cases.    Mr. Kretzinger says that, immediately after the
close of the agreement with Mr. Helm, he (Mr. Kretzinger),
when in the court room, dictated the form of voucher
which was afterwards forwarded with the $3,500 check,
and that it conformed to the agreement. Mr. Helm was not
present at the time—at least, not within hearing distance.
The stenographer died before this suit was filed, and his
notes can not be produced.    The testimony of Mr. Kretz-
inger as to what passed between himself and Mr. McDoel
is clearly incompetent.    We have, then, only the testimony
of Mr. Kretzinger and Mr. Helm, and the correspondence
which led up to the interview.    This correspondence clearly
sustains Mr. Helm's contention as to what was embraced
in the $3,500 settlement.    The court, therefore, finds, as a
matter of fact, that the $3,500 settlement embraced only
fees for services in the various Beattyville bond cases, and

did not include the fees for the services sued for in this action. It follows that plaintiffs are entitled to a judgment against the defendant for $1,102.95, with interest thereon from January 1, 1895, and their costs herein expended."

It is earnestly insisted for appellant that the judgment of the chancellor is in conflict with the well-settled rule that when a party makes a tender of a certain sum in settlement of an unliquidated demand, and attaches to his offer the condition that the sum, if taken, must be received in full satisfaction of the claim, the party to whom it is tendered, if he receives the money, must take it subject to the condition attached, and it will operate as a full accord and satisfaction, even though he declare at the time of receiving it that he accepts it in part satisfaction of his claim.

In support of this contention we are referred to a number of authorities. Thus in Massoig v. Tomlinson, 148 N. Y., 326, (42 N. E., 715), (51 Am. St. Rep., 695), the defendant wrote plaintiff: "I send you check for $300.00 (one per cent. on $30,000.00), your commission on the sale. Please sign, and return the inclosed voucher." There was a check for $300 inclosed, payable to plaintiff, and a receipt to be signed by him in full for commissions on the sale. The plaintiff replied: "I don't know what you mean by sending me a check for $300.00. I want my five per cent. commissions on the $30,000.00."

No reply was made to this letter. The plaintiff retained the check and the voucher, insisting that he was entitled to five per cent. commission. Seven months afterwards he indorsed the check, and drew the money on it, writing at the same time to the defendant inclosing receipt for $300 as part payment for his services, and stating that he claimed the balance. The defendant replied that he should con-

sider this payment in full for all commissions. The plaintiff still retaining the money, then filed suit to recover the balance of his commissions at five per cent.; and it was held that he could only accept the money as it was offered, and his action was dismissed. So, in Fuller v. Kemp, 138 N. Y., 231; (33 N. E., 1034); (20 L. R. A., 785), the plaintiff sued for services rendered as a physician, alleged to be of value $670. It appeared that he had sent the bill to the defendant, who replied, inclosing him a check for $400 in full satisfaction of the bill, and asking that it be accepted in settlement for reasons given in the letter.

The plaintiff indorsed the check, and collected the money. He then credited his bill by the amount, and sent it again to the defendant, who replied, calling his attention to the express condition upon which he had forwarded the check, and requesting the plaintiff to either keep the money upon the condition named, or to return it to him by the first mail. To this letter the plaintiff made no reply, but after the expiration of nearly a year sued for the balance of the account, and it was held that he could not recover. There are a number of other cases to the same effect, but these illustrate the rule. All the cases involve unliquidated demands.

But in this case the chancellor has found as a fact that appellees' fees for services in the Beattyville bond cases were liquidated in the settlement at $3,500. We can not, under the evidence, disturb this finding. If this settlement was made, appellant then was under obligation to pay appellees the $3,500 pursuant to the settlement, and the payment by it of the liquidated demand was no consideration for the release of other claims; for it is well settled that the payment of a part of a debt will not sustain a promise to release the remainder.

Besides, on all the evidence, there is no equity in appellant's defense.   Appellees erased from the voucher the words relating to the fees in other cases, supposing they had been inserted by mistake, as a similar mistake had been made once before, and had been corrected in this way; and, when appellant insisted that the $3,500 should be in full of all fees, they at once wrote, offering terms of settlement.   This proposition appellant did not for some time decline, but raised the question that the fees in controversy had been included in a former voucher, and a long correspondence ensued on this subject.   Appellees kept pressing it, to determine what it would do, and the correspondence shows a distinct promise on the part of appellant to take the matter up, and come to some conclusion, but this was not done until nearly the time this suit was filed.   At no time was there a demand that appellees return the money, or notice given that appellant would insist that it had been accepted in full satisfaction, and it would seem from the correspondence that both parties contemplated that the relation of attorney and client should continue, at least in the Beattyville bond cases, and that appellees were to be paid for services rendered on the appeal in these cases.   Under such circumstances, to sustain the plea would be to allow appellant to mislead appellees, and defeat substantial justice.

Judgment affirmed.