## The Northwestern Mutual Life Insurance Company v. Hanger.

(Decided June 8, 1923.)

### Appeal from Madison Circuit Court.

1.  Accord and Satisfaction—Compromise and Settlement—Acceptance of Check from Insurance Company Held Settlement of Dispute as to Tontine Dividend.—Where a dispute arose between a life insurance company and the holder of a policy as to the amount owing to the insured at the close of the tontine period, and after four months of correspondence the company wrote insured that the amount previously stated was all that was owing to insured and that letters of the agents at the time of the issuance of the policy were merely estimates and not guaranties of the amount; and the agents were not authorized to guarantee the amounts, a statement indorsed by insured on the back of the company's statement indicating his choice as to payment of the surplus and acceptance by him of a check in payment therefor was an accord and satisfaction in settlement of the dispute, which precluded recovery by insured of any additional amount.

2.  Compromise and Settlement—Settlement of Unliquidated Demand is Based on Sufficient Consideration.—The rule that the acceptance of an amount less than that actually due, though tendered and accepted as a full settlement, is without consideration, and not binding upon the parties, applies only to cases where the amount due is definite and certain, that is, liquidated, not to where it is unliquidated, or in dispute.

3.  Compromise and Settlement—Dispute as to Amount of Debt Prevents Demand from Being "Liquidated."—The word "liquidated" means that the amount due has been ascertained and agreed upon by the parties or is fixed by operation of law, and a claim, any part of which is in dispute, cannot be said to be liquidated even if a portion of it is admitted to be due, and therefore a settlement based on payment of the portion admittedly due is binding.

SHACKELFORD MILLER, TYLER BARNETT, GEORGE LINES and MILLER & MILLER for appellant.

J. J. GREENLEAF for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Under date of April 28, 1896, the defendant life insur-
ance company issued to plaintiff Harry B. Hanger an
endowment policy for $10,000.00, providing for thirty
annual premiums of $314.40 each, and for a distribution
among holders of like policies of the same class of the sur-
plus accumulated during the first twenty years, and an
annual distribution of same thereafter during the life
of the policy. It was further provided that, at the expira-
tion of the surplus accumulation or tontine period, the
company should notify the insured the amount of surplus
apportioned to his policy, and that he should then elect
which of the several optional distributions thereof he
would accept.

Accordingly, about a month before the end of this
period, the company notified Hanger that his tontine divi-
dend amounted to $2,296.43, that he could withdraw same
in cash or purchase therewith a participating full-paid
addition to the face of the policy, amounting to $3,119.00,
or pay therewith the current annual premium in full and
reduce each subsequent annual premium $292.90.

At about the time the next, or twenty-first, annual
premium of $314.40 became due, and without having made
an election as to which option he would accept, plaintiff
paid that premium and began a correspondence with the
company's state agent at Louisville, and with its actuary
at its home office in Milwaukee, Wisconsin, in which he
complained that the surplus apportioned to his policy
was some $1,500.00 less than had been guaranteed to him
in letters written to him by the company's local and state
agents when he bought the policy.

In so far as the record shows, this correspondence
was terminated by a letter from the actuary to Hanger,
dated July 12, 1916. In this letter, as in the previous
ones, an explanation was offered of the company's failure
to meet its expectations in the matter of surplus due the
policyholders in the class of which plaintiff was a mem-
ber, and insisting that the representations made to him
in the letters from its local and state agents at the time
he bought the policy were estimates merely, based upon
prior experience, and that same were not guaranties or
parts of the contract. The letter then concludes as fol-
lows:

"It seems to me, Mr. Hanger, that you use too strong
a word when you speak of having been 'duped' into a con-

tract which is repudiated. You bought a standard form of life insurance which you probably did not take the time to examine to the extent of clearly understanding its workings. The company has carried out with exactness the contract is made with you; as I have stated, the settlement offered you includes all of the funds which we had in your account.

"This settlement is as follows:

"(1) Upon due surrender of said policy, the company will pay the guaranteed value amounting to $5,114.20 and in addition thereto the tontine dividend of $2,296.43, or a total of $7,410.63.

"(2) In lieu of the tontine dividend of $2,296.43 the company will, upon receipt of satisfactory evidence of insurability, grant a full-paid participating addition to the policy of $3,119.00, payable together with the policy upon its maturity, April 28, 1926, thus increasing your insurance protection and your endowment value to $13,119.00, plus final dividend, if any, providing the ten remaining annual premiums are paid.

"(3) The aforesaid tontine dividend may be applied to pay the premium of $314.40 due April 28, 1916, and reduce the remaining nine premiums by $292.90 each. If the premium due April 28th last has already been paid, an equivalent adjustment would be made. Under this option your policy would from now on be entitled to the regular annual dividends payable on such policies, and while we cannot tell what such dividends would be exactly, they would more than offset the difference between your gross premium and the premium reduction, thereby relieving you of further outlay under the policy.

"(4) The tontine dividend may be applied to purchase a life annuity of $165.23; the policy of $10,000.00 continued in force by payment of the ten remaining annual premiums, less annual dividends as due.

"If you will advise us the option desired, we will proceed accordingly.

"Very truly yours,
"PERCY H. EVANS, Actuary."

About a month and a half thereafter, plaintiff made the following endorsement on the back of the third notice he had received from the company informing him that the accumulated surplus, or tontine dividend, apportioned

to his policy, amounted to $2,296.43, and of its equivalents under his several options of settlement:

"Richmond, Ky., August 21, 1916.

"I hereby request that the third option, premium reduction, as stated upon the other side, be granted in full settlement of the tontine dividend due under policy number 346,929.

"(Signed) HARRY B. HANGER,
Richmond, Ky."

Thus endorsed, this notice was sent to the company, and upon receipt thereof, it mailed plaintiff a check refunding to him the $314.40 he had paid for the twenty-first premium, and which, under the option upon which he requested a settlement, was taken care of out of the accumulated surplus of $2,296.43 apportioned to his policy.

When the next, or first of the nine remaining premiums fell due, on April 28, 1917, the company sent plaintiff a check for $63.10, explaining that it was the excess of the sum of his annuity of $292.90 and his dividend for the current year, amounting to $84.60, over his premium of $314.40. Like settlements were made with him on April 28, 1918 and April 28, 1919, except that his checks for these years were for $64.90 and $66.40, respectively, due to slightly larger annual dividends for those years.

All of these checks were accepted and cashed by plaintiff as received, and all three of them stated on their faces that they were made "in payment of excess dividends due this date under policy No. 346,929," which is the policy in question.

But on April 16, 1917, and before acceptance of any of these checks—except the one for $314.40 sent him on receipt of his election to accept the option for premium reduction—plaintiff instituted this action upon his policy and the letters received from the company's soliciting and state agents at the time he bought the policy, to recover $325.00 for each of the nine remaining years of his policy, claiming that by such letters the company guaranteed him a distributable surplus at the end of the tontine period of $3,810.00, and that same with the annual dividends accruing thereafter would not only pay his ten remaining premiums in full, but would also pay him $325.00 for each of the last nine years.

The company defended upon the ground that these letters were not parts of the policy, and by its terms were especially excluded therefrom; that it had no knowledge of either of them until informed thereof by plaintiff after the expiration of the tontine period; that their agents had no authority to make guaranties; and that the representations contained in the letters were not, in fact, guaranties. In addition, it pleaded plaintiff's written endorsement upon the back of the notice informing him that $2,296.43 was the amount of his accumulated surplus, or tontine dividend, and offering to settle with him upon that basis, as a complete and final settlement of the matter, and his acceptance of the checks in 1917, 1918 and 1919, as ratifications thereof.

All of the defenses were disallowed, and plaintiff was given judgment for $325.00 for each of the nine years, beginning April 28, 1917, less credits for the checks for $63.10, etc., accepted for the first three years, with interest and costs; and the company has appealed.

A settlement at the end of the tontine period of the surplus accumulated therein, was contemplated by the policy as well as the letters upon which plaintiff bases his action, and this was thoroughly understood by both parties. Their correspondence which preceded his written request that the third, or premium-reduction option "be granted in full settlement of the tontine dividend due under" his policy, clearly shows this, and that the matter in controversy between the parties was the amount of his tontine dividend and its equivalent under that option.

In these letters plaintiff was contending for a settlement on a basis of a surplus of $3,810.00 with its equivalent of $325.00 in excess of his premiums for the last nine years of his policy, which he claimed was guaranteed to him by the agents' letters. Defendant was denying his construction of these letters as guaranties, or that they were authorized by or binding upon it, or that his tontine dividend amounted to more than $2,296.43 under his contract.

After a thorough discussion of their respective positions, defendant stated in its last letter to plaintiff, as quoted above, "the settlement offered you includes all of the funds which we had in your account," and states that under the premium-reduction option his tontine dividend would pay the premium due April 28, 1916, in full, and reduce the remaining nine premiums by $292.90 each, and

that he would receive in addition the regular annual dividends payable on such policies.

Plaintiff is a man of exceptional business acumen and experience, and there is no claim that he did not understand exactly what he was doing when he later requested a settlement under that option "in full settlement of the tontine dividend" due him.  There could not have been any such claim, since it was plainly stated by the parties that the offer was made and accepted in full settlement of the matter about which they had been disputing for about four months.

But it is sought to avoid the binding force of this settlement, upon the ground that there was no consideration to support it, and to sustain this contention we are referred to cases in which it has been held that the acceptance of an amount less than that actually due, although tendered and accepted as a full settlement, is without consideration and not binding upon the parties.  In this class of cases the amount due must be definite and certain, or, as often stated, "liquidated."

But, as said in 1 C. J. 528:

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction, in the absence of fraud, artifice, mistake or imposition, as the rule that the receiving of a part of the debt due, under an agreement that the same shall be in full satisfaction, is no bar to an action to recover the balance, does not apply, where plaintiff's claim is disputed, or unliquidated."

And as to what constitutes an unliquidated claim, it is further said, on page 555:

"In legal technology the word 'liquidated' means that the amount due has been ascertained and agreed upon by the parties, or is fixed by operation of law.

"A claim, any part of which is in dispute, cannot be said to be liquidated within the rules governing accord and satisfaction."

In Baird v. United States, 96 U. S. 430, the court said:

"It is true, no doubt, that the payment by a debtor of a part of his liquidated debt is not a satisfaction of the whole, unless made and accepted upon some new consideration; but it is equally true that, where the debt is unliquidated and the amount is uncertain, this rule does not apply. In such cases the question is, whether the payment was in fact made and accepted in satisfaction."

And, in the case of Nassoiy v. Tomlinson, 148 N. Y. 330, the court defined an unliquidated demand, within the meaning of the rule, as follows:

"A demand is not liquidated even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction."

This extract from Nassoiy v. Tomlinson was not only quoted with approval by this court in Cunningham v. Standard Construction Co, 134 Ky. 198, 119 S. W. 765, but we also quoted the following from that opinion:

"The use of the check was *ipso facto* an acceptance of the condition. The minds of the parties then met so as to constitute an accord. . . . The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference from the transaction."

The facts in the Cunningham case were identical in principle with those here involved. In that case a construction company conceded that it owed Cunningham $1,347.25 upon a contract. Cunningham claimed an additional $639.40. The company sent its check to him for the undisputed amount, in full settlement of its indebtedness. Cunningham accepted the check and sued for the balance he claimed to be due him. It was contended there, as here, that because the construction company only paid Cunningham what it conceded it owed him, there was no consideration for the surrender of the unpaid portion of its bill.

In deciding the case against Cunningham, we said:

"No question is more thoroughly settled than that, where one owes a fixed and definite sum, the payment or tender of a sum less than the amount of the debt, even though accompanied with a statement that it is in full, though accepted by the creditor, does not operate to defeat him from collecting the balance of his debt, for the reason that there is no consideration for the surrender of the unpaid portion. There is nothing to support a consideration in such a case; but an entirely different rule obtains in that class of cases where the parties do not agree upon the amount of the indebtedness, and in such cases it has uniformly been held that, where a sum less than that claimed by the creditor is offered by the debtor in settlement or satisfaction of the claim, its acceptance

and retention by the creditor discharges the obligation and in such cases the creditor has been denied the right, after accepting the conditional offer, to collect the balance of his debt.''

Among the many cases that might be cited, in addition to those already referred to, recognizing this clear distinction between the class of cases relied upon by appellant and the class applicable here, are Chicago M. & St. P. R. R. Co. v. Clark, 178 U. S. 353; City of San Juan v. St. Johns Gas Co., 195 U. S. 510, 1 Ann. Cas. 796; Bull v. Bull, 43 Conn. 455; Whittaker Chain Co. v. Standard Auto Supply Co., 216 Mass. 204, Ann. Cas. 1915A, 949.

The two cases from this court relied upon by appellee are Cunningham v. Standard Construction Co., *supra,* and Sanders v. Standard Wheel Co., 151 Ky. 257, 151 S. W. 674. As we have already seen, the first of these two cases not only does not support his contention, but is directly opposed to it; while the latter case, although recognizing the rule applied in the Cunningham case, applied the rule contended for by appellee, but because of the fact that the original tender was waived by subsequent correspondence between the parties.

We are therefore of the opinion that Hanger is bound by and cannot go behind the settlement he made in full of the matter in controversy between him and the company, and that the court erred in disallowing this defense.

This conclusion renders unnecessary a consideration of the merits of the matters that were thus in dispute and settled by the parties.

Wherefore, the judgment is reversed, with directions to dismiss the petition.