## Wells v. Thomas.

(Decided October 27, 1925.)

### Appeal from Bell Circuit Court.

1. Compromise and Settlement—Payment of Amount Admitted no Consideration for Agreement to Release Balance of Claim.—Where in settlements of controversy debtor pays something he does not admit he owes, agreement to accept sum paid in full of whole account is based on valid consideration, but where debtor only pays what it is admitted he owes, agreement to release balance of claim is not supported by consideration.

2. Sales—Buyer Held Not Liable for Price of Car of Coal on Showing as to Delivery of Bill of Lading.—Where defendant denied receiving a car of coal, and testified that bill of lading was not delivered to him, and plaintiff testified that in loading cars he put bill of lading in box at tipple for railroad to sign, and put back into box for defendant, but it did not appear that bill was signed or to whom it was delivered, defendant was not liable for price.

N. R. PATTERSON for appellant.

W. T. DAVIS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

John Thomas brought this suit against William Wells to recover $453.56, the balance he alleged was due him on five cars of coal sold by him to Wells. Upon the trial of the case, after hearing the evidence on both sides,

the circuit court instructed the jury peremptorily to find for the plaintiff. Wells appeals.

Wells by his answer made the defense that he did not buy the coal from John Thomas, but from a firm composed of Thomas and Walker; but both Thomas and Walker swore on the trial that they were not partners. Wells testified that Thomas and Walker came together to settle with him, and that Thomas at that time claimed that Walker had shipped three cars and had kept all the money and had not given him his half, and that he was due to get this money as Walker didn't divide with him on the first cars. Thomas also introduced A. B. Jones, who gave similar testimony; but this evidence does not show that there was a partnership, for it appears that Thomas had leased the mine from King and Walker and was to pay them a royalty, and these first cars may have gone on the royalty or on some other debt which Walker held.

Thomas pleaded that he had settled and paid for the first four cars. The facts as to the settlement relied on are these: After Wells refused to pay Thomas on the occasion above referred to, Thomas went home and a day or two later sent his wife to see Wells to collect the money. Thomas paid her the amount he admitted he owed by giving her a check which showed that this sum was for a balance on cars of coal in full to date, and she signed a receipt to him in the name of her husband: "This shows paid in full to date." But Wells, in fact, paid her only $140.73, and this he admitted he owed Thomas. When there is a controversy and a settlement is made by which the debtor pays something he does not admit he owes, the agreement to accept the sum paid in full of the whole account is based upon a valid consideration. But where the debtor only pays what it is admitted he owes there is no consideration for the agreement to release the balance of the claim. Fenwick v. Phillips, 3 Met. 88; 1 R. C. L. 184; Cox v. Adelsdorf, 51 S. W. 616.

These were the only defenses presented as to the first four cars and the peremptory instruction of the court to the jury to find for the plaintiff the balance due on these four cars was proper.

Wells by his answer denied receiving the fifth car. The facts are these: Wells was supplying a school in Ohio

with coal, and he made an arrangement with Thomas by which he got the coal from Thomas. In this way the first four cars were shipped. As to the last car Wells testified as follows:

"I didn't have anything to do with that car of coal only I gave them billing instructions to ship this coal to, and this last car they didn't get a bill of lading. This last car I never got a bill of lading. I seen Walker a time or two and maybe Thomas and they said they didn't see what could be wrong with the bill of lading; it had never been in the box."

Wells also testified that King collected for this car and that it was Thomas' duty to deliver to him the bill of lading and number, and that he never saw the bill of lading or knew anything about the shipment of the car. On the other hand, Thomas testified that when he loaded the cars he put the bill of lading in the box at the tipple and when the railroad company took the cars out it would sign the bill of lading and put it back in the box; that he loaded the last car one day and left before the bill of lading was signed and put in the box. He really does not know what happened after this. He testified that Wells was to look after the billing and that in the case of the other cars he had given some of the bills to Wells and Wells had gotten some of them from the box.

In this condition of the proof the court erred in giving a peremptory instruction against Wells for this car load of coal. For there is no proof that the bill was signed by the railroad company or to whom delivered or what became of it after Thomas put the unsigned paper in the box on the day before he left. If, under the contract between Thomas and Wells and the course of business between them, the coal was delivered to Thomas when it was placed in the car and the bill of lading put in the box for the railroad company to sign, the jury should find for the plaintiff. But if under the contract and the course of business between them the coal was not delivered to Wells until the bill of lading signed by the railroad company was delivered to him, the jury should find for the defendant as to this car of coal, and the court should have so instructed the jury under the evidence.

The title in such cases passes when the thing sold is delivered, and unless this coal had been delivered to

Wells he is not responsible for its loss or liable for the price.

Judgment reversed and cause remanded for a new trial.