## Alcorn v. Arthur et al.

(Decided May 3, 1929.)

(As Modified, on Denial of Rehearing. October 18, 1929.)

510

E. E. RICE, BRUCE & BULLITT, R. LEE BLACKWELL and LEO T. WOLFORD for appellant.

R. R. FRIEND for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Floyd J. Arthur, Fleming G. Lynch, and Everett Morris, the appellees here, but whom we shall call the plaintiffs, sought a judgment against Leroy Alcorn for $425 alleged to be the balance due them upon certain drilling done for Alcorn. Alcorn denied all liability to the plaintiffs, pleaded an accord and satisfaction by which this whole matter had been settled, and by a counterclaim Alcorn sought a judgment against Arthur for $710; a judgment against Lynch for $500; and against Morris for $210. The trial resulted in a judgment against Alcorn for $350, and he has appealed.

On August 24, 1926, Alcorn made a contract with Morris and Lynch to do for him certain drilling on Campbell's branch of Cow creek in Estill county. Aside from signing the contract and joining as one of the parties plaintiff, we are unable to see where Morris had anything further to do with the matter; but Arthur seems to have taken his place in the contract, and Lynch and Arthur did this drilling. As Alcorn was up there once or twice while the work was going on, and saw Arthur there, and made no complaint, he consented to the substitution of Arthur for Morris. This was an unfortunate undertaking for Alcorn. The length of time required to move the tools and do the work exceeded his expectation. He had to advance money to Lynch and Arthur to enable them to carry on the work; he had to guarantee the payment of certain bills for rope and other things they needed, and quite a number of the creditors both of Arthur and Lynch sued these parties and attached funds in the hands of Alcorn. Alcorn lived in Middletown, Jefferson county, Ky., and this drilling was in Estill county, so he was represented locally by a Mr. Stanley. When the work was done, Stanley sent to Alcorn a report of it. That report showed 15 full days' work that these men had put in on this, and 7 fractional days. He stated in that report

that these drillers were claiming 28 days and that he was unable to settle with them. The cash that Alcorn had advanced, the accounts the payment of which he guaranteed, and the money attached in his hands amounted to $371.29, and he wrote Arthur offering to settle this on the basis of 20 days' drilling at $25 per day, which would amount to $500, and deducting this $371.29, there was a balance due Arthur and Lynch of $128.71. Of this, $85.74 was due to Arthur and $42.97 was due to Lynch, and accordingly he mailed to Arthur a check for $85.47, writing therein: *"For account in full drilling well on Campbell's branch."* He sent to Lynch a check for $42.97, writing therein: *"For account in full for drilling to date."* In this letter to Arthur he said: "This is the amount coming to you as I understand our contract. I have been informed by your statement and by others that you think otherwise, but if you cannot see it the way I do, you will have to get the court to settle it because I cannot see it the way you do, and I am settling by the statement that Mr. Stanley gave me, and according to our contract."

He sent these checks to his father-in-law, Mr. Chaney, for delivery to those men, and instructed Chaney if they accepted them to turn them over to them. Arthur at first refused to accept his check, but in a couple of hours, Lynch came back and asked for Arthur's check, and both Arthur and Lynch indorsed their checks and collected them. Alcorn pleaded this as an accord and satisfaction. Arthur testifies that when the check was tendered he said it was not correct and refused to take it. He insisted there was a balance of 17 days unpaid for, which would amount to the $425 for which this suit was brought. He said he refused to take the check and went down the street studying about it, and consulted an attorney and discussed the matter with him, and said he was advised that the acceptance of the check would not prevent him from collecting his money, so he came back and accepted the check. He says if he had thought the acceptance of the check would have prevented his collecting the balance he claimed, he would not have accepted it. Mr. Lynch was asked, if he noticed these words in the check. *"For account in full for drilling to date."* He said he never paid any attention to it, and that he would not have accepted the check if he had thought that was a settlement; but on cross-examination he admitted that he and Arthur had a talk about the matter, and he says: "I told Arthur the best thing we could do was to come on down, that Mr.

Alcorn would pay the rest and it did not make any difference anyway. I said I would take my check and put it to my credit on all he owed me and then he would have to pay the rest.''

Ordinarily, these men would be charged with notice of what was in these checks; but aside from that, their own evidence shows that they knew what was in them, discussed it with each other, and signed and indorsed them with their eyes open. The law usually is what the average reasonable man thinks it ought to be. See Bailey v. Farmers' Bank of White Plains, 227 Ky. 179, 12 S. W. (2d) 312. This was an unliquidated demand. The price to be paid per day was not in dispute, but there was sharp dispute between these parties about the number of days of work that had been done. Alcorn proposed to them to settle on the basis of 20 days, and he sent them checks for the sums due them on that basis, reciting in them that they were in full settlement. They took them. That was a complete accord and satisfaction. Northwestern Mut. Life Ins. Co. v. Hanger, 200 Ky. 118, 254 S. W. 326; Cunningham v. Standard Const. Co., 134 Ky. 198, 119 S. W. 765; Western & So. Life Ins. Co. v. Quinn, 130 Ky. 397, 113 S. W. 456; Chicago, M. & St. P. R. Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. Ed. 1099; L. N. A. & C. R. Co. v. Helm & Bruce, 109 Ky. 388, 59 S. W. 323, 22 Ky. Law Rep. 964; 1 C. J., 555, secs. 71 and 78; 1 R. C. L. 196, sec. 32; Extensive notes to same effect will be found in 34 A. L. R. 1035, and 20 L. R. A. 785.

The plaintiffs here are arguing that this was not a good-faith controversy; that Alcorn cannot accept and act on the statement he received from Stanley. The plaintiffs testified Stanley was not at the work and did not know what was done, and that before Alcorn can claim this was a good-faith controversy, he must be fully advised as to all the facts. That is not the law. No soil is so productive of controversy as ignorance. If men in dealing with each other were ignorant of no fact concerning the matter they were endeavoring to arrange, there would be no controversy. Controversy grows out of ignorance.

In the case of Wells v. Thomas, 210 Ky. 785, 276 S. W. 840, these were the facts: Thomas claimed to have sold Wells 5 cars of coal, for which he was making a claim of $754.12. The first four cars amounted to $601.12, and Wells admitted getting them. The fifth car amounted to $153, and Wells denied both purchase and receipt of it.

Wells claimed the $601.12 was going to a partnership composed of Thomas and Walker, each of whom was indebted to Wells; Thomas' indebtedness being $159.83. This Wells canceled and gave to Thomas a check for $140.73, marked "Paid in full." This made $300.56, and one-half of the $601.12 that was not disputed; but Thomas claimed all of this, that Walker had nothing to do with it, and sued Wells for $453.56, which was made up of the other $300.56 and the $153 for the car in dispute. The court had erroneously instructed the jury peremptorily to find for the plaintiff. That was the only question on that appeal. That was all we should have attempted to decide, but in reversing the judgment in that case we said: *"Where the debtor only pays what it is admitted he owes, there is no consideration for the agreement to release the balance of the claim."*

Plaintiffs have seized on that statement, and are strenuously contending for the application of that doctrine to this case, but we are persuaded that statement went too far. The claim plaintiffs were making against Alcorn was in dispute; it was unliquidated. The rule is thus stated in 1 R. C. L. p. 196, sec. 32.

"When a claim is in dispute and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim and the creditor accepts the remittance or collects the check without objection it is generally recognized that this will constitute a good accord and satisfaction. . . . And when a check is sent upon the condition that it be accepted in full payment of a disputed claim, there is, as a general rule, but one of two courses open to the creditor, either to decline the offer and return the check or to accept it with the condition attached. The moment the creditor indorses and collects the check, knowing it was offered only upon condition, he thereby agrees to the condition and is estopped from denying such agreement. It is then that the minds of the parties meet and the contract of accord and satisfaction becomes complete." That rule is correct. See 1 C. J. 562, sec. 85; Chicago, Milwaukee & St. Paul Railway Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. Ed. 1099; Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662; Tanner v. Merrill, 108 Mich. 58, 65 N. W. 664, 31 L. R. A. 171, 62 Am. St. Rep. 687; Ravenswood Paper Mill Co. v. Dix, 61 Misc. Rep. 235, 113 N. Y. S. 721; Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695; Komp v. Raymond, 42 App. Div. 32, 58 N. Y. S. 909;

514

Neely v. Thompson, 68 Kan. 193, 75 P. 117; Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785; Treat v. Price, 47 Neb. 875, 66 N. W. 834, 835; Ostrander v. Scott, 161 Ill. 339, 43 N. E. 1089; Hayes v. Insurance Co., 125 Ill. 626, 18 N. E. 322, 1 L. R. A. 303; Bass Dry Goods Co. v. Roberts Coal Co., 4 Ga. App. 520, 61 S. E. 1134; Redman & Co. v. A. & B. Air-Line Ry., 129 Ga. 133, 58 S. E. 874, 875.

The plaintiffs were plainly notified in the checks given them that Alcorn was giving them in full settlement. They had their election, to accept them as drawn, or to return them; they elected to keep them and cash them. When they did that, the minds of the parties met; that was an accord and satisfaction of their claim.

These parties seem to have lost sight of the matter asserted in the counterclaim. They have not discussed it, and we are going to accept their appraisement of the matter. As they have said nothing about it, we will say nothing about it.

The judgment is reversed, all liens asserted by plaintiffs against Alcorn's property are discharged, and Alcorn shall have judgment for his cost.

The whole court sitting.