## Warfield Natural Gas Co. v. Allen et al.
(Decided Dec. 20, 1935.)

KIRK & WELLS, HAROLD A. RITZ and S. S. WILLIS for appellant.

C. P. STEPHENS and C. B. WHEELER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, hereinafter called the defendant, has appealed from a judgment of $1,082.76 recovered against it by appellees, whom we will refer to as plaintiffs. The enforcement of the judgment has been stopped by a supersedeas served on plaintiffs January 11, 1934.

This litigation is the outgrowth of three oil and gas leases executed on October 10, 1924, by the plaintiff's to the Ohio Fuel Oil Company, and by it assigned to the defendant. With the exception of the description of the land affected, these leases are identical, and we shall treat them as one contract. These parties are not strangers, as will be seen from 236 Ky. 358, 33 S. W. (2d) 34, and 248 Ky. 646, 59 S. W. (2d) 534, 91 A. L. R. 890, but such former litigation, though growing out of this leasing throws no light on the present questions, which grew out of this provision:

> "The lessee to pay for each gas well from the time and while the gas is marketed the sum of one-eighth of proceeds received from the sale thereof, payable each three months. Lessee agrees to bury, when requested so to do by the lessor all pipe lines used to conduct gas off the premises."

There is no dispute about the amount of gas produced by the wells on these properties, which was 66,-

818,000 cubic feet; the only dispute being about the price due plaintiffs therefor.

Controversy Begins.

Defendant first began to market gas from plaintiffs' property in October, 1929, and on January 24, 1930, it sent plaintiffs a check for $51.50 for gas marketed in October, November, and December, 1929. This check was accepted and Dr. Allen wrote the company this letter:

"February 4th, 1930.

"Warfield Natural Gas Co., Charleston, W. Va.

"Gentlemen: I have your check No. B639 in the amount of $51.50 dated January 24th, 1930, which recites that it is payment in full for gas royalty on well No. 3877 for October, November, and December, 1929.

"I am accepting this check only as part payment as it does not conform to the contract in the lease, which was made by me to the Ohio Fuel Oil Co., dated October 10th, 1924, and recorded in Deed Book No. 69 at page 401, records of the Floyd County Court Clerk's office.

"The lease recited, 'That the Lessee is to deliver to the Lessor in tanks, tank cars, or pipe lines a royalty on one-eight (⅛) of all oil produced and saved from the premises, and to pay for each gas well from the time and while the gas is marketed the sum of one-eighth of proceeds received from the sale thereof, payable each three months.' Whatever price that you sell this gas for is what you owe me for my one-eighth.

"Trusting that we can adjust this matter amicably and avoid necessity of having to go to court, I beg to remain,

"Very truly yours,

"[Signed]   J. H. Allen."

To this, Dr. Allen received the following answer:

"United Fuel Gas Co., Inc.,

"Charleston, W. Va.,

"February Sixth, 1930.

"Harold A. Ritz, General Counsel,

"B. J. Pettigrew, Atty.

"Dr. J. H. Allen, Langley, Ky.

"Dear Sir: I have your favor of the 4th inst. in regard to royalties on the well drilled on your lands under lease executed by you to Ohio Fuel Oil Company and assigned to this Company.

"The lease contemplated that you be paid one-eighth of the amount received for the gas, the lessee company selling the gas in the field.

"We, of course, do not sell the gas in the field and we have calculated the royalties on the basis one-eighth of twelve cents which is the maximum price paid for gas in that field, and we think this is all that we should be called upon to pay under the contract.

"Very truly yours,

"HAR:H        [Signed]      Harold A. Ritz."

Further fruitless correspondence followed, and on October 21, 1930, this litigation began.

## The Checks.

Both before this suit was begun and during its pendency plaintiffs continued to accept checks from the defendant. There are copies of several checks in this record, each containing the number of the lease, the date of the lease, the number of the well, and a statement that it is in full payment for all claims for royalty on the certain oil and gas lease described, for the three-month period ending on a certain date which is always given, and accompanying each check is a statement showing how many minutes gas was taken from the well each day, and how many thousand feet were taken each day, and the total thereof. The correspondence shows plaintiffs knew the basic price on which these checks were given, besides they could have learned that by a simple calculation.

The parties were not agreed about the price per thousand feet upon which the royalty due was to be calculated, that was in dispute, and when plaintiff's accepted these checks under those circumstances, that was a complete accord and satisfaction as to the gas for which those checks were given, and the court erred in allowing an additional recovery therefor.

In Cunningham v. Standard Construction Co., 134 Ky. 198, 119 S. W. 765, 766, this court stated the rule:

"No question is more thoroughly settled than that, where one owes a fixed and definite sum, the payment or tender of a sum less than the amount of the debt, even though accompanied with a statement that it is in full, though accepted by the creditor, does not operate to defeat him from collecting the balance of his debt, for the reason that there is no consideration for the surrender of the unpaid portion. There is nothing to support a consideration in such a case; but an entirely different rule obtains in that class of cases where the parties do not agree upon the amount of the indebtedness, and in such cases it has uniformly been held that, where a less sum than that claimed by the creditor is offered by the debtor in settlement or satisfaction of the claim, its acceptance and retention by the creditor discharges the obligation, and in such cases the creditor has been denied the right, after accepting the conditional offer to collect the balance of his debt."

When there is a genuine dispute between the parties as to the amount due, and a sum is tendered in satisfaction of the claim, its acceptance is a complete accord and satisfaction. Sanders v. Standard Wheel Co., 151 Ky. 257, 151 S. W. 674. The tender and acceptance of checks "in full for twenty days' work" constituted a complete accord and satisfaction. Alcorn v. Arthur, 230 Ky. 509, 20 S. W. (2d) 276. The many authorities cited in the Alcorn v. Arthur opinion fully sustain the principles above stated, and other cases repeat the reasoning and apply the rule. Northwestern Mutual Life Insurance Co. v. Hanger, 200 Ky. 118, 254 S. W. 326; Pepper v. Aiken, 2 Bush, 251; Ricketts v. Hall, 2 Bush, 249; Chicago, M. & St. P. R. Co. v. Clark, 178 U. S. 353, 20 S. Ct. 924, 44 L. Ed. 1099; Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785.

## What These Leases Mean.

We have copied above the provision involved. Defendant had the exclusive right to produce the gas and to market the gas. It was as much its duty to find the market as to find the gas. Nothing is said about its expenses in doing either. It must be presumed that the payment by the defendant of its expenses in doing both is the consideration it is to pay for its seven-eighths

of the proceeds, for it pays no other and it certainly gets the lion's share

Proceeds of a sale, unless there is something in the context showing to the contrary, means total proceeds. Caperton's Adm'rs v. Caperton's Heirs, 36 W. Va. 479, 15 S. E. 257; McMurphy v. Garland, 47 N. H. 316, 319; Brown v. Green & Hickey Leather Co., 244 Mass. 168, 138 N. E. 714; Martin v. Buechel, 186 Ky. 786, 218 S. W. 278; Harman v. Avritt, 72 S. W. 751, 24 Ky. Law Rep. 1919; Kohlsaat v. Main Island Creek Coal Co., 90 W. Va. 656, 112 S. E. 213.

### Where Must Market Be Found.

The lease is silent as to where this market must be found. In such cases, it is usually held to be at the place of production. The plaintiff J. H. Allen testifies gas is usually measured at the well, and from the statements put in evidence, we know this gas was measured at the well for the statements show the production of each individual well. So we can say the defendant took this gas at the well, and the question is what it must pay for it. Must it pay its value there or must it pay what it may ultimately have got for it?

The testimony of the plaintiff J. H. Allen shows gas is usually sold at the well in the locality where these wells are situated and that 12 cents per thousand feet is the usual price in that locality, and that this price and custom prevailed there when these leases were made. Then that must have been what the parties contemplated when they made this lease. Hence this lease means that plaintiffs are to get one-eighth of the proceeds of the gas measured and sold at the well side, and no one says 12 cents per thousand feet is not its value there, and the action of plaintiffs in repeatedly accepting checks on that basis supports this view.

When these leases were made, the plaintiff insisted on a minimum royalty of one-eighth of 12 cents per thousand feet, but Mr. Schumacher, who took the lease, insisted on putting in the clause in controversy. Mr. Schumacher was representing the original lessee, the Ohio Fuel Oil Company, and it had no pipe lines and plaintiffs knew it would have to sell its gas at the well side. Nothing was said in the lease about a sale elsewhere and this lease must be held to mean one-eighth

of the gross proceeds of a sale of the gas at the well side, and that is all for which defendant must account even though it may market the gas elsewhere and get a much greater sum for it.

### When Gas is Not Marketed.

The defendant says the court rendered a judgment against it for $75 because it failed to market this gas for a period of three months, but if it will examine this judgment it will see that was not done. Plaintiffs asked that these leases be forfeited because the gas had not been marketed for three months, and the court said:

"No, you are not entitled to that by your contract but are entitled to $75.00 for each three months the wells are down because of no market for gas."

The court gave no judgment for this $75.

The court erred in saying what it did for such is not the proper construction of the lease, the provision of which is:

"In the event a well producing gas in paying quantities be drilled by Lessee on the within leased premises and Lessee be unable to market said gas within 60 days, the said Lessee will, beginning 60 days after the completion of said well, pay to Lessor the sum of Seventy-five ($75.00) Dollars each three months until said gas is marketed and when the said gas is marketed the Lessor is to receive only the royalties as above provided."

That was put in to insure a prompt arrangement for marketing upon the completion of the wells, it does not mean that the defendant must pay $75 per well each three months the wells are down because of no market.

Judgment reversed; the whole court sitting.