AIRRICH, LLC, Appellant,

v.

FORTENER AVIATION, INC., d/b/a
Aircraft Services of Ohio
County, Appellee.

Fortener Aviation, Inc., d/b/a Aircraft
Services of Ohio County, Appel-
lee/Cross–Appellant,

v.

Airrich, LLC, Appellant/Cross–Appellee.

NO. 2013–CA–001985–MR

Court of Appeals of Kentucky.

RENDERED: APRIL 29,
2016; 10:00 A.M.

Briefs for Appellant/Cross–Appellee: Sean S. Land, Owensboro, Kentucky.

Brief for Appellee/Cross–Appellant: Nicholas P. Goetz, Owensboro, Kentucky.

BEFORE: COMBS, NICKELL, AND VANMETER, JUDGES.

*OPINION*

VANMETER, JUDGE:

Airrich, LLC appeals from the Ohio Circuit Court's October 22, 2013, Findings of Fact, Conclusions of Law, and Judgment entered in favor of Fortener Aviation, Inc. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Airrich purchased a 1975 Cessna 421B airplane in February 2010 and subsequently hired Fortener to perform a required airworthiness inspection in January 2011. Fortener found 326 issues making the aircraft unairworthy. Upon receipt of the inspection, Airrich filed suit in Florida against the sellers of the plane. Meanwhile, Airrich did not take any action to have the plane repaired or moved from Fortener's hangar. In July 2011, Fortener began charging Airrich $450 per month in hangar fees, with the first invoice in-

cluding rent for the previous four months. Airrich made a payment of $3,390 in December 2011, designated by Airrich as the inspection fee and two months' rent.

In January 2012, Fortener filed suit seeking to foreclose on its possessory lien for fees related to the inspection and storage of Airrich's plane and Airrich filed a counterclaim. Airrich deposited $11,416.09 with the court, representing the amount Fortener claimed Airrich owed. Shortly thereafter, Airrich caused its plane to be removed from Fortener's hangar.

A bench trial was held on July 15, 2013, after Airrich was granted a continuance to find a new expert witness. Fortener's expert testified to 68 defects, each rendering the aircraft non-airworthy and non-certifiable. Airrich's expert verified that the defects found by Fortener's expert made the aircraft non-certifiable for flight under federal regulations and manufacturer specifications. The trial court issued Findings of Fact, Conclusions of Law, and Judgment in favor of Fortener in the amount of $9,616.09 and denied the relief requested by Airrich. Following the bench trial, Fortener filed a motion for sanctions pursuant to CR [1] 11; the court denied that motion without a hearing. This appeal and cross-appeal followed.

## II. STANDARD OF REVIEW

For a case tried without a jury, the trial court's factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *Cole v. Gilvin*, 59 S.W.3d 468, 472 (Ky.App.2001). A factual finding is not clearly erroneous if supported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.1998). Substantial ev-

idence is evidence of substance and relevant consequence sufficient to induce conviction in the minds of reasonable people. *Id.* The fact-finder is "to determine the credibility of witnesses and the weight to be given the evidence." *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 118 (Ky.1991). Issues of law are reviewed *de novo* by a reviewing court. *Nash v. Campbell Cnty. Fiscal Court*, 345 S.W.3d 811, 816 (Ky.2011).

## III. AIRRICH'S ARGUMENTS

### A. Barring of Airrich's Expert

Airrich first argues that its designated expert, Mark Cobb, should have been permitted to give expert testimony with respect to reasonable storage/hangar fees that a facility such as Fortener should charge despite the fact that Cobb is based out of Tennessee rather than Kentucky. A trial court's determination of whether an expert witness is qualified to give expert testimony under KRE [2] 702 is reviewed for abuse of discretion. *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 378 (Ky. 2000). We find no abuse of discretion. The trial court determined that Cobb could not provide testimony concerning reasonable hangar fees in Kentucky. Accordingly, refusing to admit his testimony on this issue was appropriate.

### B. Motion for Continuance

Second, Airrich argues that the trial court erred by denying its motion for a continuance so that Airrich's expert could have time to complete a thorough examination of the plane. The trial court has broad discretion in granting or denying a continuance; this court will not reverse for failure to grant a continuance

---

1. Kentucky Rules of Civil Procedure.

2. Kentucky Rules of Evidence.

absent an abuse of discretion. *Abbott v. Commonwealth,* 822 S.W.2d 417, 418 (Ky. 1992).

> Whether a continuance is appropriate in a particular case depends upon the unique facts and circumstances of that case. Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice.

*Snodgrass v. Commonwealth,* 814 S.W.2d 579, 581 (Ky.1991) (*overruled on other grounds by Lawson v. Commonwealth,* 53 S.W.3d 534 (Ky.2001)).

■ Airrich had previously been granted a continuance to allow for its expert to inspect the aircraft. The second continuance was denied after Cobb found that certain repairs would need to be made on the plane before it could obtain a ferry permit to fly the plane to Cobb's shop for a further inspection. Given the nature of this lawsuit, we do not believe the trial court erred by refusing Airrich's request for a second continuance. A second continuance would have led to unnecessary delay since Airrich's own expert opined, after only a cursory inspection, that the plane was not safe to fly, even in the limited context of a ferry permit.

### C. Quashed Subpoenas

■ ■ Next, Airrich claims the trial court erred by quashing its subpoenas of two Federal Aviation Administration ("FAA") inspectors for the bench trial. Airrich intended to have these inspectors testify regarding private conversations between the inspectors and Fortener concerning Airrich's plane. The subpoenas were quashed after the United States Attorney filed a motion noting that state subpoenas issued to federal agents are barred by sovereign immunity and federal regulations. *See* 49 CFR[3] § 9.2 and 9.5 (prohibiting demands for testimony or records in private litigation concerning information acquired in the course of a Department of Transportation employee's performing official duties or because of his status as a federal agency employee). Airrich claims that the relevant conversations had nothing to do with the FAA inspectors' official duties. We agree with the trial court that the inspectors were only subpoenaed by Airrich due to their status as FAA agents, and that therefore, they could not be subpoenaed by a state court. Airrich has failed to provide this court with any reason why the conversations are relevant and/or outside the scope of an FAA inspector's official duties, and thus, we can only assume that the FAA officials were acting in their official capacity when discussing Airrich's plane with Fortener. Thus, quashing the subpoenas was appropriate.

### D. Disqualifying the Trial Judge

■ Following the trial, Airrich filed a motion pursuant to KRS[4] 26A.015(2)(a) to disqualify the trial judge for expressing an opinion concerning the merits of the proceeding. Airrich believes that because the trial judge signed his Findings of Fact, Conclusions of Law, and Judgment before Airrich's time to submit proposed findings had ended, the trial judge expressed an opinion as to the merits and/or demonstrated bias against Airrich. Airrich further cites the quashed subpoenas and multiple denied motions in support of this

---

3. Code of Federal Regulations.

4. Kentucky Revised Statutes.

contention. However, we will only consider the issuance of the judge's order prior to Airrich's time to submit proposed findings since a party in possession of facts which he believes should disqualify the judge must move for disqualification before an adverse ruling is entered against him. *Harrell v. City of Middlesboro*, 287 S.W.2d 614, 615 (Ky.1956).

Airrich cites no law supporting its contention that the trial court could not enter findings of fact and conclusions of law before Airrich had an opportunity to submit proposed findings and conclusions. In addition, a finding that a trial court's judgment can be considered an improper opinion on the merits has no basis in law or logic. Thus, the trial court judge did not err by refusing to disqualify himself.

### E. Erroneous Findings of Fact and Conclusions of Law

Lastly, Airrich argues that the trial court made multiple erroneous findings and conclusions in its judgment. First, Airrich alleges that the trial court erred by finding that Fortener was entitled to a lien on the aircraft. KRS 376.270 provides, in relevant part,

[a]ny person engaged in the business of selling, repairing or furnishing accessories or supplies for motor vehicles shall have a lien on the motor vehicle for the reasonable or agreed charges for repairs, work done or accessories or supplies furnished for the vehicle, and for storing or keeping the vehicle[.]

The definition of motor vehicle includes airplanes. KRS 376.281. Clearly, Fortener was engaged in the business of repairing airplanes. Thus, Fortener was entitled to a lien on the plane for the storage fees incurred in keeping the plane under KRS 376.270, and the trial court did not err.

Next, Airrich argues that Fortener agreed to a lesser amount in storage fees when it cashed the $3,390 check Airrich sent with a note stating "Pay $3150[;] Plus $120 Hangar Rent[;] Plus $120 Hangar Rent[.]" Airrich cites *Alcorn v. Arthur*, 230 Ky. 509, 20 S.W.2d 276 (1929), in support of this argument. Irrespective of the holding in *Alcorn*, KRS 355.3–311 governs accord and satisfaction by use of instrument. This section sets forth the following:

(1) If a person against whom a claim is asserted proves that:

(a) That person in good faith tendered an instrument to the claimant as full satisfaction of the claim;

(b) The amount of the claim was unliquidated or subject to a bona fide dispute; and

(c) The claimant obtained payment of the instrument,

the following subsections apply.

(2) Unless subsection (3) of this section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(3) Subject to subsection (4) of this section, a claim is not discharged under subsection (2) of this section if either of the following applies:

(a) The claimant, if an organization, proves that:

1. Within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place; and

2. The instrument or accompanying communication was not received by that designated person, office, or place.

(b) The claimant, whether or not an organization, proves that within ninety (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (a)1. of this subsection.

(4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

In this case, the note from Airrich, or more particularly from John Rich on behalf of Airrich, merely stated "Pay $3150[;] Plus $120 Hanger Rent[;] Plus $120 Hanger Rent[,]" and the memo line on the accompanying instrument, in the amount of $3,390, stated "Hanger Rent 400BJ." These notations fall far short of the requisite "conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." [5] KRS 355.3–311(2). Whatever Airrich's intent was in tendering the $3,390 check, it failed to explicitly and conspicuously communicate that intent to Fortener. Fortener's claim for hanger rent, $450 per month, was therefore not foreclosed.

We agree with the trial court that absent an agreement to the contrary, Fortener had the right to notify Airrich what it would charge if the plane remained in its hangar storage facility. Since Airrich did not remove the plane after Fortener's notice of hangar storage fees, for purposes of the mechanic's lien statute, reasonable monthly fees continued to accrue from the date of the invoice going forward. Expert testimony established that $450/month was reasonable, so the lien amount of $9,900 was appropriate.

## IV. FORTENER'S CROSS–APPEAL

### A. Hangar Rent Prior to the First Invoice

In its cross-appeal, Fortener first claims entitlement to four additional months of hangar rent for those months in which Airrich's plane was stored at Fortener's facility prior to the first invoice for rent sent by Fortener to Airrich in June 2011. Fortener first invoiced Airrich for hangar storage fees in June 2011, four months after the inspection was completed; however, Fortener admits that the parties had no agreement as to hangar rent prior to that time. The trial court found, in absence of a storage fee agreement, Fortener was only owed rent from the time of the June invoice going forward. Fortener argues that the trial court instead should have used the date on which Airrich first benefitted from Fortener's storage of the plane in calculating the relief owed. We disagree.

Fortener admits that it did not notify Airrich that it would demand a monthly storage fee until July 2011. Since the parties did not have an agreement prior to

---

**5.** Even under the holding of *Alcorn,* which reflects the common law of accord and satisfaction, the debtor was required to set forth a clear statement that the check was in full payment of the claim. 230 Ky. at 513, 20 S.W.2d at 277.

that demand, Fortener is not owed for the cost of storage prior to July 2011.[6]

## B. Sanctions

 Next, Fortener contends that it should have been awarded sanctions pursuant to CR 11[7] since Fortener was forced to defend against Airrich's meritless counterclaim. Fortener notes that the trial court warned Airrich about filing a meritless counterclaim, yet Airrich still filed a counterclaim without performing a reasonable inquiry to ensure that the counterclaim was well grounded in fact. A trial court's decision to deny CR 11 sanctions is reviewed for abuse of discretion. *Clark Equip. Co., Inc. v. Bowman,* 762 S.W.2d 417, 420 (Ky.App.1988). A trial court abuses its discretion when the decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

Airrich's counterclaim alleged breach of contract, wrongful possession/trespass to chattel, breach of fiduciary duty, and negligence; Airrich claimed that Fortener's inspection and grounding of the airplane were improper. However, Airrich used the allegedly improper inspection report, which cited multiple issues with the plane and deeming it unsafe to fly, in its Florida lawsuit against the aircraft's seller. Fur-

ther, Airrich's expert himself testified that the plane was unairworthy. Fortener thus argues that Airrich's counterclaim was unreasonable and unsupported by facts or existing law.

We believe the trial court acted within its discretion in denying Fortener's motion for CR 11 sanctions. Airrich's counterclaim was premised, however faultily, on the argument that Fortener's inspection was improper because it reported faults above and beyond those rendering the plane unairworthy in an effort to extract substantial repair work from Airrich. Since the plane's airworthiness was not the crux of Airrich's claim, we do not believe that its counterclaim was so unreasonable as to require sanctions.

## V. CONCLUSION

For the above reasons, the Ohio Circuit Court's Findings of Fact, Conclusions of Law and Judgement are affirmed.

ALL CONCUR.

---

6. Additionally, Fortener offers no case law in support of its contention that rent is due from the date that Airrich first benefitted from Fortener's services.

7. CR 11 states, in relevant part,

[t]he signature of an attorney or party constitutes a certification by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction[.]