**C. M. REED et al., Appellants,**

v.

**Rosa HACKWORTH, Appellee.**

Court of Appeals of Kentucky.

March 2, 1956.

Arnett Mann, Salyersville, for appellants.

Marcus Mann, Salyersville, for appellee.

CAMMACK, Judge.

Rosa Hackworth, the appellee, filed this action for a declaration of her rights under

an oil and gas lease she executed to C. M. Reed. The appellants, defendants below, are Momarc Utilities Corporation, the purchaser of the gas, C. M. Reed, and Delbert Reed, his son, who was a party to the contract with Momarc. The lease provided that Reed was "To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil (and gas) produced and saved from the leased premises." The lease is silent as to the place of market and the price of the gas.

The Momarc-Reed contract provided that Momarc was to pay twenty-five cents per 1,000 cubic feet of gas. Reed was to pay the cost of a pipe line from the well to a meter located approximately two and one-half miles away, near the city limits of Salyersville. Momarc supplies gas to consumers within that City. Under the agreement between Momarc and Reed, Momarc was to advance the cost of the pipe line, and then be reimbursed by withholding ten cents for each 1,000 cubic feet of gas passing through the meter. The pipe line was to become Reed's property upon Momarc's full reimbursement. Thereafter Reed would get the full twenty-five cents for each 1,000 cubic feet of gas. Another provision of the contract stated that gas was to be sold to certain named shareholders at the rate of fifteen cents per 1,000 cubic feet at the well.

No meter was installed at the well. Some ten local patrons were permitted to tap the line between the well and the meter (near Salyersville) at a flat rate of $4 per month, without regard to the amount of gas used. It is undisputed that the appellee receives one-eighth of the income from the flat-rate customers.

The appellee contended that she was entitled to receive a one-eighth royalty based upon the price of twenty-five cents which Reed received from Momarc. The trial court entered judgment awarding her a one-eighth interest in the pipe line when its cost is paid in full; a one-eighth interest in the twenty-five cents per 1,000 cubic feet to be received thereafter; and one-eighth of the fifteen cents per 1,000 cubic feet which Reed will receive while the cost of the pipe line is being paid.

The appellants contend that, since the Hackworth-Reed lease was silent as to the place of market and the price of the gas, the royalty should apply to the fair market value of gas at the well. In support of their contention, they cite the cases of Rains v. Kentucky Oil Co., 200 Ky. 480, 255 S.W. 121, and Warfield Natural Gas Co. v. Allen, 261 Ky. 840, 88 S.W.2d 989. Both cases support the proposition that if a lease is silent on the question, royalty should be based upon the market value of the gas at the well.

We fail to see the distinctions which the appellee has attempted to draw between those cases and the case at bar. In the Rains case the gas was sold at the well for six cents per 1,000 cubic feet. The purchaser piped the gas to the City of Williamsburg and there resold it for forty-two cents per 1,000 cubic feet. We said that the lessee of a gas well " * * * fully complies with his duty (to the lessor) if he sells the gas at a reasonable price at the well side to another who is willing to undergo the risk of expending a large amount of money for the purpose of distributing the gas to the ultimate consumers." While the cost of piping and marketing the gas in that case (over $125,-000) was much larger than in the case under consideration (approximately $4,500), the opinion recognized no duty on the part of the lessee to make expenditures for piping the gas to a better market, as long as the well side price was reasonable.

The appellee emphasizes that in the Warfield case, the gas was measured at the well, and also that there was no testimony of a well side price higher than that for which the gas was sold. While these matters probably were taken into consideration, they certainly do not overshadow the conclusion reached to the effect that the lessee need account only for the recited proportion of a sale at the well side, even though he may market the gas elsewhere for a greater sum. We conclude that where, as here, the lease

is silent concerning the place of market and the price, the royalty should be applied to the fair market value of gas at the well.

The provisions of the Momarc-Reed contract merely set a price of twenty-five cents per 1,000 cubic feet if Reed piped the gas at his own expense to Salyersville where Momarc could resell at a higher price. We have noted that under the holding in the Rains case, Reed owed no duty to his lessor (Hackworth) to do this piping. Hence, we think the twenty-five cent price recited in the contract should not be considered as evidence of the fair market value of the gas at the well. Indeed, the contract specifically apportioned ten cents of the specified price as the cost of piping.

The record contains the testimony of numerous witnesses, including experts on the question, to the effect that the fair market value of gas at the well in the vicinity of the lease in question is between twelve and fifteen cents per 1,000 cubic feet. The appellee seeks to diminish the effect of that evidence by relying upon one witness' testimony that on his property gas is sold for twenty-five cents per 1,000 cubic feet at the well. However, he explained that only seven consumers use the gas, and he admitted he knew of no other instances where such a price was received at the well side. Hence, he did not purport to testify concerning the fair market value of gas at the well side in that vicinity, but merely pointed to one isolated instance where a particular price was received.

Under these circumstances, we think the record establishes clearly the fair market value to be between twelve and fifteen cents per 1,000 cubic feet. Since the Momarc-Reed contract explicitly recognizes a price of fifteen cents, we think the appellee is entitled to a one-eighth royalty based upon that price. Since the additional ten cents obviously was intended to compensate for the cost of piping, the appellee is not entitled to any portion of that amount, or any interest in the pipe line, which will belong to Reed when its cost is paid in full.

The judgment is reversed, with directions to set it aside, and to enter a judgment consistent with this opinion.