PAN AMERICAN PETROLEUM CORPO-
RATION et al., Appellants,

v.

Mrs. Mabel L. HARDY et al., Appellees.

No. 4089.

Court of Civil Appeals of Texas.

Waco.

Sept. 12, 1963.

Rehearing Denied Oct. 3, 1963.

———◆———

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, John M. Jamison,—Lynn P. Carter, Houston, Skelton, Bowmer & Courtney, Byron Skelton, Temple, for appellees.

McDONALD, Chief Justice.

This is an action for damages by lessors, Hardy et al., against the lessees, Pan American Petroleum Corporation, et al., (of a 133 acre tract of land in the East Bay

City Gas field), for failure to develop, and for drainage, of a second reservoir; hereafter called the "B" sand.

Plaintiffs alleged that defendants in February 1945 drilled and completed a gas and distillate well into the "A" sand; that no well was drilled into a lower reservoir, the "B" sand, until 18 March, 1960; that plaintiffs' lease with defendants provides that plaintiffs receive ⅛ of the oil, gas, etc. produced from the property. Plaintiffs allege that beginning in 1950 they tried to get defendants to increase production from the lease; that defendants would not do so, and on 10 September 1958, defendants advised that "*all* known reservoirs on the lease had been developed in a prudent and timely manner;" that defendants furnished geological data to the Railroad Commission which caused it to classify the structure as a single reservoir; that defendants *knew* from 1949 that 2 separate vertical reservoirs in fact existed; that in 1960 as a result of data furnished the Railroad Commission by plaintiffs, the Railroad Commission found the existence of, and classified the field on the basis of the two separate reservoirs, the "A" sand reservoir above, and the "B" sand reservoir vertically below the "A" sand reservoir; that defendants were obligated, both under the lease and in law, to reasonably develop the premises by developing each separate reservoir, and owed the duty to prevent drainage from the "B" sand reservoir; that defendants concealed and withheld information of the "B" sand reservoir from the Railroad Commission and represented to plaintiffs there was only one reservoir on the lease when they knew such was false. Plaintiffs alleged damages for failure to reasonably develop, and for drainage from the "B" sand, in an amount equal to ⅛ of the market value of gas and distillate which could have been produced from the "B" sand reservoir from 1 December 1949 to March 1960; which plaintiffs allege to be $220,-812 plus interest; plaintiffs further alternatively plead for damages in a like amount by reason of "fraud, deceit and wrong-doings" of defendants, and for $60,000 exemplary damages by reason of plaintiffs' expenses in enforcing their rights; and for cancellation of the lease as to formations defendant has not committed to develop.

Defendants answered, alleging among other things that they had developed the premises in accordance with the rules of the Railroad Commission governing. the field; that plaintiffs could have received no more royalty than they in fact received, if additional wells had been drilled into the "B" formation; and that plaintiffs had received their fair share of the production from the field.

Trial was to a jury which, in answer to issues submitted, found:

1) Defendants, in not completing a well in the "B" sand earlier than April 1960, failed to develop the lease in a manner in which a reasonably prudent operator, operating in good faith with reasonable expectation of profit, would have done.

2) $73,450 will reasonably compensate plaintiffs for the loss sustained by them because of the failure of defendants to develop the lease in a reasonably prudent manner.

3) Defendant, prior to April 1, 1960, failed to protect the lease against damage in the "B" sand formation, in a manner in which a reasonably prudent operator would have done.

4) $73,450 will reasonably compensate plaintiffs for the loss sustained as a result of defendants' failure to protect the lease against drainage.

5) Defendants knew, or should have known, prior to the 8 September 1959 Railroad Commission hearing, that the gas sands identified as "A", and "B", were separate reservoirs.

6) Defendant, at a time when it knew or should have known that "A" and "B" sands were separate reservoirs, wilfully followed a course of conduct in its dealings

with the Railroad Commission, designed and intended to cause the Railroad Commission to regulate and prorate the 2 reservoirs as a single reservoir.

7) Such course of conduct designed to have the Railroad Commission prorate the field as a single reservoir, was for the purpose of avoiding the separate development of the "A" and "B" zones on plantiffs' land.

8) Defendants' course of conduct was a contributing cause of the damages suffered by plaintiffs from the drainage from the "B" sand.

9) Defendant represented at a time it knew such representations to be false, to plaintiffs that all known gas sands under the lease had been fully developed.

10) Such representations were made with the purpose of inducing plaintiffs not to prosecute claims for development or drainage of said lease.

11) Such representations were a contributing cause of the damages suffered by plaintiffs from the drainage of the "B" sand on the lease.

12) $25,000 should be recovered by plaintiffs as exemplary damages from defendants by reason of the wrongful course of conduct, or misrepresentations of defendant.

13) through 16) Concern an additional sand in connection with which the Trial Court ordered a conditional decree of cancellation. This additional sand has now been developed by defendants, and this phase of the case is moot.

17) Defendants failed at some time to develop the lease as a reasonably prudent operator would have done.

18) Plaintiffs have not recovered as much gas from the well into the "A" sand, as they would have recovered had there been an additional well into the "B" sand.

19) Plaintiffs have been damaged by defendants in not drilling into the "B" sand prior to 1 January, 1960.

20) Defendants did not act in good faith in the development of the lease.

21) Plaintiffs have been damaged by defendants' course of conduct in its dealings with the Railroad Commission, designed to cause the Commission to regulate and prorate the 2 gas reservoirs as a single reservoir.

22) Defendants' course of conduct in dealing with the Railroad Commission was *not* carried out in good faith by them.

The trial court entered judgment on the foregoing verdict for plaintiffs for $98,450, (being $73,450 actual damages and $25,000 exemplary damages).

Defendants appeal, contending:

1) Defendants were entitled to judgment because as a matter of law the evidence shows that plaintiffs had recovered at the time of trial their fair share of the gas and liquid hydrocarbons underlying their land.

2) The Trial Court erred in refusing to admit certain evidence which would show that plaintiffs at the time of trial had recovered their "fair share" of the gas and liquid hydrocarbons underlying their land.

3) Defendants were entitled to judgment as a matter of law, since under the rules of the Railroad Commission and the methods by which allowables are allocated to wells, no additional gas could have been produced from plaintiffs' land through 2 wells, one in the "A" sand and one in the "B" sand, than was already being produced through a single well in the "A" sand.

4) The Trial Court erred in awarding exemplary damages.

We revert to defendants' first three contentions. Defendants contend that on an acre feet basis, plaintiffs had recovered

more gas and distillate than their lease would have been entitled to pro rata to the field; and that such pro rata was all that plaintiffs were entitled to; hence, plaintiffs are not hurt as a matter of law. Defendants contend that an owner cannot recover more than the above, which is his "fair share" of the oil and gas underlying his land. Defendants contend that a landowner is entitled only to his fair share of the oil and gas in a field, computed upon the acre foot relationship that the landowners' lease bears to the size of the field.

As to the drainage from the "B" sand reservoir, the evidence shows that there was more drainage into plaintiffs' "A" reservoir, than there was from plaintiffs' "B" reservoir. Defendants contend that this negates any recovery by plaintiffs for drainage from the "B" reservoir as a matter of law.

In short, defendants' position is that it may offset production from the well in the "A" reservoir, against the amount of production plaintiffs would have been entitled to from the "B" reservoir, had defendants developed the "B" reservoir after they knew of its existence, as a separate reservoir.

■ The jury found that defendants knew, or should have known, that the "A" and "B" sands were separate reservoirs prior to September, 1959; and that defendants failed to develop the lease as a prudent operator; and the evidence is ample to sustain such findings.

■ The duty of lessee to develop, exists as to each reservoir or stratum which contained sufficient oil and gas to justify the cost of development. Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684. Article 6008, Vernons Ann.Tex.St. contemplates that the Railroad Commission will treat reservoirs of gas underlying the same tract of land separately, and provided in part:

"The monthly reservoir allowable shall be allocated among all wells entitled to produce gas therefrom so as to give each well its fair share of the gas to be produced from the reservoirs * * *."

■ It is our view that the computation of "fair share" of the oil and gas recoverable or recovered must be on the basis of "fair share" from each reservoir; and that production from another reservoir cannot be "offset" against entitled production from the "B" reservoir in the case at bar. See Benz-Stoddard v. Aluminum Co. of America, Tex., 368 S.W.2d 94.

■ Defendants further contend that they were entitled as a matter of law to rely on the reservoir classification given the field by the Railroad Commission; and that the findings of the jury are without support in the evidence or against the great weight and preponderance of the evidence. The Railroad Commission's single reservoir classification was made as a result of defendants' wilful false representations found by the jury, and defendants should not be permitted thereunder to benefit from their wrongdoing. We think that the findings of the jury have ample support in the evidence, and are not against the great weight and preponderance of the evidence. Defendants' contentions 1 through 3 are overruled.

Defendants' 4th contention is that the Trial Court erred in awarding exemplary damages.

As noted above, we think the jury's findings are amply supported by the evidence.

■ Exemplary damages may be awarded in addition to compensatory damages, where a defendant is shown to have acted wilfully or fraudulently. Further compensation may be allowed by law in addition to actual damages by way of punishment, and as an example for the good of the public, and may also include compensation for inconvenience, reasonable attorney's fees, and other losses too remote to be considered under actual damages.

■ We think the misrepresentations, falsification and concealment of material facts by defendants in their course of conduct with the Railroad Commission, and with plaintiffs, justify the award. Moreover, plaintiffs had to go to great expense to employ experts and attorneys to study the field and its geology to ascertain the true facts in connection with the instant litigation.

All of defendants' contentions and points are overruled, and the judgment of the Trial Court is affirmed.