**TEXAS OIL & GAS CORP., Appellant,**

v.

**Jeff HAGEN, et al., Appellees.**

**No. 9176.**

Court of Appeals of Texas, Texarkana.

Sept. 25, 1984.

Rehearing Denied Nov. 13, 1984.

---

W.S. Barron, Jr., Brice & Barron, Dallas, for appellant.

David A. Lake, Tyler, Jesse L. Nickerson, Pittsburg, for appellees.

CORNELIUS, Chief Justice.

Jeff Hagen and others (plaintiffs) are royalty owners in three gas units operated by the defendant Texas Oil & Gas (TXO). They brought this suit as a class action representing themselves and all other similarly situated royalty owners, alleging that TXO had failed to pay the proper royalties on gas production from the units. Their action was based generally on breach of contract, failure to market the gas with good faith and reasonable diligence, and fraud by misrepresentation and concealment. After a nonjury trial the district court rendered judgment for plaintiffs in the amount of $1,075,030.02 actual damages, $300,000.00 exemplary damages and $250,000.00 attorney's fees. Actual damages represented the deficiency in gas royalties paid plus unpaid royalties on sulphur. TXO assigns twenty-two points of error alleging no evidence and insufficient evidence to support the vital findings, as well as certain procedural errors. We affirm the judgment as to liability but reverse the award of actual damages and remand the cause to the district court for the limited purpose of finding and reassessing actual damages in accordance with the directions of this opinion.

When the wells were placed on production TXO executed a gas purchase contract with Delhi Pipeline Company, its wholly owned subsidiary, which provided that the gas would be sold to Delhi at a stipulated price and delivered to it at or near the outlet of TXO's separators on the leased premises. From that point Delhi transported the gas to a central point in the Pittsburg field. There it was dehydrated and then transported seven and a half miles to the Getty New Hope plant where the hy-drogen sulfide and carbon dioxide were removed. It was then transported approximately fifty miles to the Southwestern Electric Power Company Wilkes power plant in Marion County where about one-half of it was sold to SWEPCO. The remaining gas was transported an additional fifty miles and sold to International Paper Company at its Domino plant in Cass County. The prices paid to Delhi by SWEPCO and IPC were 15¢ per MCF higher than the price provided by the contract between TXO and Delhi. TXO contends that its contract with Delhi constituted a sale of the gas at the wells, and it has accounted to the plaintiffs for their royalty on the basis of the price provided in that contract. Plaintiffs, among other things, contend that the actual sales took place at the SWEPCO and IPC plants, and consequently they should have been paid royalties on the basis of the market value at the well of the gas pursuant to the lease royalty provisions [1], and also that they should have been paid royalties on the sulphur removed from the gas prior to its delivery to SWEPCO and IPC. Plaintiffs signed division orders which provided that the terms of the leases would "govern as to the price to be paid for said production ...," and that "the purchase and sale of gas ... shall be covered, subject to and controlled by ..." the gas sales contract between TXO and Delhi. Copies of the contract were not attached to or furnished with the division orders, however.

The ultimate facts and conclusions found by the district court were that the gas was sold off premises at the SWEPCO and IPC plants rather than at the wells to Delhi; TXO made fraudulent misrepresentations in its division orders and concealed material facts concerning its sale of the gas and its relationship with Delhi; and that TXO breached its position of confidence toward

---

1. The royalties to be paid by Lessee are: (a) on oil, ... (b) on gas, including casing-head gas or other gaseous substance, produced from said land and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale; ... and (c) on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined and marketed the royalty shall be fifty cents (50¢) per long ton....

plaintiffs and failed to act in good faith and fairness in its obligation to market the gas for the highest price reasonably obtainable.

■ We find the evidence insufficient to support the conclusion that TXO made a positive misrepresentation of fact in its division orders. The statement in the division orders relied upon to constitute a misrepresentation was simply that the price of the gas for royalty purposes would be governed by the terms of the leases. That statement was and is true. The fact that TXO thought it could establish an "at the well" sale by contracting with its subsidiary to take the gas at that point does not convert the division order statement into a misrepresentation. A representation as to the legal effect of an instrument is ordinarily not actionable. *Furman v. Keith*, 226 S.W.2d 218 (Tex.Civ.App.—San Antonio 1949, writ ref'd); *McGary v. Campbell*, 245 S.W. 106 (Tex.Civ.App.—Beaumont 1922, writ dism'd); *Franklin Ins. Co. v. Villeneuve*, 60 S.W. 1014 (Tex.Civ.App.1901, no writ); 25 Tex.Jur.2d *Fraud and Deceit* § 37 (1961). To amount to an actionable misrepresentation, a statement must be clearly untrue. If, under a reasonable construction it is consistent with the truth, it cannot be actionable as a false statement. *Estapa v. Saldana*, 218 S.W.2d 222 (Tex. Civ.App.—San Antonio 1948, writ ref'd n.r. e.).

■ The judgment can be sustained, however, on the basis of breach of contract. There is sufficient evidence to support the district court's finding that the purported sale of the gas to Delhi was a sham, and that TXO used that arrangement and its relationship with its wholly owned subsidiary to create an unfair device to deprive plaintiffs of their rightful royalties. By proof that Delhi, in this situation, was merely the alter ego of its parent TXO, the district court could disregard the purported sale at the wells and find that the true sale was off premises at the SWEPCO and IPC plants. *See Tyson v. Surf Oil Co.*, 195 La. 248, 196 So. 336 (1940); Kuntz, Oil and Gas § 40.4(e) (1967).

■ The mere fact that a subsidiary is wholly owned by the parent and there is an identity of management does not justify disregarding the corporate entity of the subsidiary, but where management and operations are assimilated to the extent that the subsidiary is simply a name or a conduit through which the parent conducts its business, the corporate fiction may be disregarded in order to prevent fraud and injustice. *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex.1975); *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336 (Tex.1968). There is ample evidence here to support such a conclusion with reference to TXO and Delhi. Both companies have the same officers, directors, and office and field personnel. TXO directly paid all of the payroll and directly controlled all of Delhi's business functions, including expenses, income, and capital expenditures. The only separation was by interoffice chargeback accounting. Both companies filed consolidated income tax returns, a single SEC registration and financial statement, and property in the name of Delhi was included in a TXO mortgage to a New York bank. All benefits earned by Delhi are direct benefits and amounts realized by TXO including income from the sale of sulphur from the gas in question. TXO owned all of Delhi's stock and acted as its representative for the gas sales agreements with SWEPCO and IPC.

■ The leases involved here provide that where the sale is off premises the royalty shall be one-eighth of the market value at the well. Market value at the well is the market value of the gas where sold, less the reasonable cost of transporting the gas to the market and the processing necessary to make it marketable. *Le Cuno Oil Co. v. Smith*, 306 S.W.2d 190 (Tex.Civ. App.—Texarkana 1957, writ ref'd n.r.e.), *cert. denied*, 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1147 (1958); *Reed v. Hackworth*, 287 S.W.2d 912 (Ky.1956); *Wall v. United Gas Pub. Serv. Co.*, 178 La. 908, 152 So. 561 (1934); *Clear Creek Oil & Gas Co. v. Bushmiaer*, 264 S.W. 830 (Ark.1924); *Phillips Petroleum Co. v. Bynum*, 155 F.2d 196 (5th Cir.), *cert. denied*, 329 U.S. 714, 67

S.Ct. 44, 91 L.Ed.2d 620 (1946); *Sartor v. United Gas Pub. Serv. Co.*, 84 F.2d 436 (5th Cir.1936). Thus, plaintiffs were entitled to recover as actual damages the difference between what they had been paid and the market value of the gas where sold, less the reasonable cost of transportation and processing. *Le Cuno Oil Co. v. Smith*, supra; *Reed v. Hackworth*, supra; *Clear Creek Oil & Gas Co. v. Bushmiaer*, supra; Kuntz, Oil and Gas § 40.5 (1967). And as the real sale was at the SWEPCO and IPC plants, plaintiffs were also entitled to their royalties on the sulphur which was extracted and sold by Delhi prior to the deliveries to SWEPCO and IPC.

█ It was plaintiffs' burden to prove market value at the well. They attempted to discharge that burden by introducing testimony and exhibits showing prices paid for gas in the general area of the units involved here. TXO argues that the evidence was insufficient because the gas from its units had a lower BTU value than the other gas, and because the comparable sales were too remote in distance to allow a fair comparison. We disagree on this point. Plaintiffs' witness took account of the lower BTU content of TXO's gas and advised the court how his data could be converted to render the sales comparable. The other variations concerning quality, quantity, time and location were pointed out to and were undoubtedly considered by the court. These differences would go to the weight rather than to the admissibility of the evidence, and we find the data sufficient to allow the trial court to find the market value of the gas.

█ Market value of the gas for the purposes of paying royalties, however, cannot exceed the maximum price permitted by the Natural Gas Policy Act. 15 U.S.C.A. § 3301 (1982); *Flowers v. Diamond Shamrock Corp.*, 693 F.2d 1146 (5th Cir. 1982); *Bowers v. Phillips Petroleum Co.*, 692 F.2d 1015 (5th Cir.1982). The NGPA became effective November 8, 1978, and we are unable to determine if the market value found by the district court for the volumes of gas sold after that time exceed-

ed the maximum price allowable by the NGPA. Because of this and the further fact that transportation costs were not deducted from the market values in calculating the actual damages, we must remand the cause to the district court to find and apply these figures. In this regard, we hold that the "contract" as used in the NGPA for determining the "contract price" means the letter agreements concerning the sale between Delhi and SWEPCO and IPC, and not the TXO-Delhi contract.

█ TXO attacks the award of exemplary damages, but we find the evidence sufficient to support it. An oil and gas lessee owes its lessors a higher than ordinary duty to market the production from the leases in a manner which will obtain the best and highest price reasonably obtainable. The standard required in such cases has been stated to be that of the highest good faith or the best of good faith. *See Amoco Prod. Co. v. First Baptist Church of Pyote*, 579 S.W.2d 280 (Tex. Civ.App.—El Paso 1979), *aff'd*, 611 S.W.2d 610 (Tex.1980); *Le Cuno Oil Co. v. Smith*, supra. This duty of highest good faith places the lessee in a position of trust and confidence toward its lessors. *Le Cuno Oil Co. v. Smith*, supra; *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61 (10th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957); Kuntz, Oil and Gas § 40.5. The evidence supports the conclusion that TXO violated this relationship by failing to disclose to its lessors the facts concerning the sale and its relationship with Delhi, and in arranging a sham sale in order to deprive plaintiffs of their rightful royalties. *See Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380 (Tex.Civ.App.—Corpus Christi 1976), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *Export Ins. Co. v. Herrera*, 426 S.W.2d 895 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.); *Etter v. Von Sternberg*, 244 S.W.2d 321 (Tex. Civ.App.—Galveston 1951, writ ref'd n.r.e.). Exemplary damages may be awarded in a breach of contract case where the breach is accompanied by fraud, deceit, or oppressive

conduct, and especially where as a result of the artifice or concealment the plaintiffs are required to go to great lengths and expend substantial funds to discover and remedy the fraud. *Gulf, C. & S.F. Ry. Co. v. Levy*, 59 Tex. 542 (1883); *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, supra; *Gladen Buick, Inc. v. Sterling*, 524 S.W.2d 590 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.); *Etter v. Von Sternberg*, supra; *Export Ins. Co. v. Herrera*, supra; *Pan American Petroleum Corp. v. Hardy*, 370 S.W.2d 904 (Tex.Civ.App.—Waco 1963, writ ref'd n.r.e.). Misrepresentation is not the only kind of fraud. The breach of a confidential relationship, concealment of material facts, and any device used to cheat or deceive another may in a proper case amount to fraud, and the term is synonymous with bad faith and overreaching. *Kinard v. Sims*, 53 S.W.2d 803 (Tex.Civ.App.—Amarillo 1932, writ ref'd).

■■■■ TXO argues that attorney's fees should not have been awarded. We agree that attorney's fees were not recoverable pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1984) because there was no proof that the claim was presented as required by that statute. We find, however, that the court properly awarded attorney's fees as a part of the exemplary damages. *Bank of North America v. Bell*, 493 S.W.2d 633 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *Carter v. Barclay*, 476 S.W.2d 909 (Tex.Civ.App.—Amarillo 1972, no writ); *Export Ins. Co. v. Herrera*, supra; *Pan American Petroleum Corp. v. Hardy*, supra. We further find that the exemplary damages so awarded are not excessive.

■■■ We overrule TXO's contention that plaintiffs are prohibited from recovering additional royalties because they executed division orders which referred to the TXO-Delhi gas sales contract. The division orders did not contradict or amend the terms of the leases. Indeed, they expressly provided that the *price* for the gas would be governed by the terms of the leases, and the leases provide that for an off premises sale the price will be the market value at the well. The statement in the division orders that the TXO-Delhi contract will govern the *sale* of the gas did not put the royalty owners on notice that they would not be paid their rightful royalties, and in the absence of a known dispute concerning the correctness of the payments being made under the division orders, the owners' acceptance of the payments would not constitute an accord and satisfaction. *See Phillips Petroleum Co. v. Williams*, 158 F.2d 723 (5th Cir.1946); *Union Prod. Co. v. Pardue*, 117 F.2d 225 (5th Cir.1941); *Whepley Oil Co. v. Associated Oil Co.*, 6 Cal. App.2d 94, 44 P.2d 670 (1935); Kuntz, Oil and Gas §§ 40.4, 42.8(b) (1967).

■■■ We also reject TXO's contention that plaintiff should have been required to elect between their claims of breach of contract and fraud. The plaintiffs could proceed with a claim of breach of contract accompanied by fraud. *K.W.S. Mfg. Co. v. McMahon*, 565 S.W.2d 368 (Tex.Civ.App.—Waco 1978), writ ref'd n.r.e.). Those remedies are not inconsistent as they are when one seeks to enforce a contract and also to rescind it for fraud.

In view of our disposition of this case, it is not necessary for us to pass on TXO's point of error complaining of the trial court's failure to file additional findings of fact and conclusions of law. TXO's other points have been carefully considered and are overruled.

For the reasons stated the judgment is reversed in part, and the cause is remanded to the district court for the limited purpose of finding and calculating the deficiency in gas royalty payments for the periods sued for, and entering judgment therefor on the following basis: the reasonable market value of the gas where sold, not to exceed the maximum price allowable therefor since November 8, 1978, under the Natural Gas Policy Act, and less the reasonable cost of processing said gas and transporting it to the IPC and SWEPCO plants. In all other respects the judgment is affirmed.