**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 5, 2004**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 18, 2005

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-11160
(Summary Calendar)

R. A. RAMMING; MARILYN RODDY; EVELYN
HALFHILL; REVA SUE SIMMS; DAVID REEVES;
KARLA JEAN HUGHES; LORETTA KAY OWEN;
DONNIE LOU WILLIAMS; W. L. BRUCE, individually;
W. L. BRUCE, a Texas General Partnership,

Plaintiffs-Appellees,

versus

NATURAL GAS PIPELINE COMPANY OF AMERICA; ET AL,

Defendants,

CHESAPEAKE PANHANDLE LIMITED PARTNERSHIP,
formerly known as MC Panhandle Inc., formerly known as
Chesapeake Panhandle Inc.; CHESAPEAKE OPERATING INC.,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas
(USDC No. 2:01-CV-0354-J)

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:

In this diversity action, Chesapeake Panhandle Limited Partnership and Chesapeake Operating

Inc. (collectively "Chesapeake") appeal the district court's awarding of summary judgment for the

plaintiffs and the district court's modification of the parties' Rule 68 Offer of Judgment. Chesapeake argues that the district court erred as a matter of law in holding that Chesapeake breached the gas contract by deducting post-production charges from Appellees' royalty payments. Chesapeake also asserts the district court erred as a matter of law in refusing to file the parties' Rule 68 Offer of Judgment. We hold that Chesapeake can appeal the district court's summary judgment order because the judgment entered by the district court, dismissing Chesapeake's right to appeal, was invalid as a matter of law. Because we also find that the district court erred in holding that the post-production charges could not be deducted from the plaintiffs' royalty payments, we reverse the district court's grant of summary judgment as to that claim.

FACTUAL AND PROCEDURAL BACKGROUND

This claim concerns two leases (collectively the "Ramming leases") covering 640 acres in Carson County, Texas. The first lease is a 1930 lease from William Ramming covering 560 acres. The second lease is a 1937 lease from Bertha Ramming covering the remaining 80 acres. The plaintiffs in this action have succeeded to the original lessors' interests under those oil and gas leases, and the defendant on appeal is the current operator and seller of natural gas produced from them.

The 1930 lease states royalties are to be paid on the basis of 1/8 of net proceeds from sales at the mouth of the well. The 1937 lease states royalties are to be paid on the basis of 1/8 of the market value, at the well, of gas sold or used on the basis set out in a division order executed by lessor to lessee.

On December 23, 1937, the plaintiffs' predecessors in interest executed a consolidation agreement aggregating the entire leasehold as a single unit for the production of natural gas and

2

apportioning the royalties that may be due from natural gas production under the terms of the consolidation agreement.

The plaintiffs initiated the underlying suit against the former and current owners and operators of an active gas well subject to said lease. The claims against the prior owners and operators of the well, and certain other matters, were all settled. The remaining claims before the district court were breach of contract claims in which the plaintiffs allege that defendant-appellant Chesapeake, the current owner and operator, breached the lease by underpaying gas royalties, by improperly deducting gathering and other post-production charges from the royalty owners' payments, and by failing to provide free gas for the household attached to the subject lease.

On August 26, 2003, the District Court granted summary judgment as to the issue of liability in favor of the plaintiffs on all of their claims. On September 8, 2003, the parties filed a Rule 41 Stipulation of Dismissal with Prejudice, which stipulated that the parties had resolved their differences and requested the district court to withdraw its summary judgment. The District Court refused to sign the order of dismissal or withdraw its summary judgment order.[1] On September 10, 2003, the parties entered into a Rule 68 Offer of Judgment agreement, which, among other things, preserved Chesapeake's right to appeal the August 26 summary judgment order. The parties submitted the written acceptance of the Rule 68 Offer of Judgment to the clerk of court to file, along with a form of judgment for the district court to sign. Chesapeake's counsel states that the district court indicated by conference call with all counsel that the court would not sign the form of judgment because it did

---

[1] It should be noted that the court erred in not allowing the Rule 41 Order of Dismissal. Except in special circumstances, not present here, a voluntary order of dismissal requested by both parties is effective upon filing and does not require the approval of the court. See generally 12 WRIGHT & MILLER, FED. PRAC. & PROC. § 2363 (2d ed. 1997). However, the defendant-appellants do not appeal from the denial of the Rule 41 order.

not settle all issues. The district court then ordered the parties to file a stipulation of facts. On September 15, 2003, the parties submitted their stipulated facts along with another form of judgment for the court to sign, which mirrored the previous judgment. The district court did not sign the parties' agreed judgment; instead, the court entered its own judgment filed on September 18, 2003. The court's judgment wrote out Chesapeake's stipulation that the judgment was without prejudice to their right to appeal the August 26 summary judgment order, but in all other ways mirrored the parties' agreed upon judgment. The defendants filed a Motion to Amend Judgment, which the district court denied. A timely notice of appeal was subsequently filed.

## DISCUSSION

On appeal, Chesapeake argues that the district court erred in failing to enter their form of judgment and in not granting their Motion to Amend Judgment. Chesapeake also appeals only that part of the August 26, 2003 summary judgment order that found they improperly deducted post-production charges from the payments of the royalty owners.

I.      Rule 68 Offer of Judgment

We review an interpretation of Rule 68 de novo. Jason D.W. by Douglas W.  v.  Houston Indep. School Dist., 158 F.3d 205, 208 (5th Cir. 1998).

Federal Rule of Civil Procedure 68 provides, in relevant part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party ... If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.

FED. R. CIV. PRO. 68

Rule 68 permits defendants in an action to present an offer of judgment to the plaintiffs at any time more than 10 days before trial; the plaintiff has 10 days in which to unconditionally accept the offer.[2] FED. R. CIV. P. 68. Generally, a Rule 68 offer is considered irrevocable during that 10 day period. 12 WRIGHT & MILLER, FED. PRAC. & PROC. § 3005 (2d ed. 1997). A party must reserve its right to appeal prejudgment rulings in the offer of judgment, otherwise no appeals from judgment will be allowed. See, e.g., Shores v. Sklar, 885 F.2d 760 (11th Cir.1989) (holding that plaintiff's consent to offer of judgment without reserving right of appeal waives plaintiff's right to appeal denial of class certification).

If the plaintiff accepts the offer, either party may file the offer and acceptance with the clerk of the court, who shall then enter judgment. FED. R. CIV. P. 68. The court generally has no discretion whether or not to enter the judgment. A Rule 68 Offer of Judgment is usually considered self-executing. See generally Mallory v. Eyrich, 922 F.2d 1273, 1279 (6th Cir. 1991) ("By directing that the clerk *shall* enter judgment after proof of offer and acceptance have been filed, the explicit language of the rule signifies that the district court possesses no discretion to alter or modify the parties' agreement"); Webb v. James, 147 F.3d 617, 621 (7th Cir. 1998) ("Rule 68 operates automatically, requiring that the clerk 'shall enter judgment' upon the filing of an offer, notice of acceptance and proof of service. This language removes discretion from the clerk or the trial court

---

[2] The Supreme Court noted that the short mulling period allotted to plaintiffs, and the severe consequences which may result post-trial from rejection of pre-trial offers, is consistent with the rule's purpose of encouraging settlement, discouraging protracted litigation and making plaintiffs "think very hard about whether continued litigation is worthwhile." Marek v. Chesny, 473 U.S. 1, 6, 105 S. Ct. 3012, 87 L. Ed.2d 1 (1985) (denied award of attorneys fees to prevailing plaintiffs in §1983 action. Plaintiffs rejected Rule 68 offer, which ended up being more favorable than their jury award; rule's prohibition against cost awards to plaintiffs in such situations is not overridden by attorney fee award in §1988 to successful civil rights plaintiffs).

as to whether to enter judgment upon the filing of the accepted offer"); <u>Perkins v. U.S. West Communications</u>, 138 F.3d 336, 338 (8th Cir. 1998) ("Rule 68 leaves no discretion in the district court to do anything other than enter judgment once an offer of judgment has been accepted."); <u>Goodheart Clothing Co. v. Laura Goodman Enter., Inc.</u>, 962 F.2d 268, 275 (2nd Cir. 1992) (dissent) ("Indeed, the district court had no alternative but to enter the judgment exactly as offered and accepted, in view of the 'self-executing' nature of Rule 68 judgments"); <u>Harris v. City of New York</u>, 2004 U.S. Dist. LEXIS 12879, at *2 (S.D.N.Y. July 12, 2004) ("the entry of final judgment pursuant to Rule 68 is a ministerial act that does not require the action of the judge"). There are certain limited circumstances under which courts retain authority to review an offer of judgment: in a class action, pursuant to Rule 23, a court is charged with the authority to accept a settlement; and in a case seeking injunctive relief, a court is vested with the ultimate power to enter an injunction. 12 WRIGHT & MILLER, FED. PRAC. & PROC. § 3005 (2d ed. 1997). Outside of those limited circumstances, a court must enter a judgment accepted by the parties. <u>Id.</u>

The district court erred in refusing to sign the parties' Offer of Judgment and in denying the defendant's Motion to Amend Judgment. The district court did not assign any reason for its refusal to sign the Offer of Judgment or its denial of defendant's Motion to Amend Judgment. The plaintiffs in this case are not certified as a class nor do they make a claim for injunctive relief. Pursuant to Rule 68, the defendants served their offer of judgment upon the plaintiffs more than 10 days before the September 22nd trial date and the plaintiffs unconditionally accepted the offer within the acceptable time period. Pursuant to the plain language of Rule 68, which mandates that the clerk <u>shall</u> enter judgment, we find the district court did not have the discretion to refuse to enter the Offer of Judgment in this case. The court, as a matter of law, had no authority to refuse to sign the September

6

10 Offer of Judgment nor to dispense with the defendant's reserved right to appeal in the September 18 judgment. Because Chesapeake preserved their right to appeal from the district court's summary judgment order in the offer of judgment, we will next turn to their challenge to summary judgment.

II.     Summary Judgment

This Court reviews the grant of summary judgment de novo, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate. <u>Flock v. Scripto-Tokai Corp.</u>, 319 F.3d 231, 236 (5th Cir. 2003) (citing <u>Ramirez v. City of San Antonio</u>, 312 F.3d 178, 181 (5th Cir. 2002)). A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). To determine "whether there is a dispute as to any material fact, we consider all of the evidence in the record, but we do not make credibility determinations or weigh evidence." <u>Flock</u>, 319 F.3d at 236 (citation omitted). Rather, "we draw all reasonable inferences in favor of the nonmoving party." <u>Id.</u>

Chesapeake argues that the district court erred as a matter of law in granting summary judgment for the plaintiffs. It is undisputed that the contractual agreements at issue are not ambiguous and there is no doubt as to the meaning and intent of the parties to the agreement. <u>Ramming v. Natural Gas Pipeline Co. of Am.</u>, No. CA 2:01-CV-354-J, at 5 (N.D. Tex. Aug. 23, 2003). This Court's jurisdiction is based upon diversity of citizenship, therefore, we must look to the

7

law of Texas in determining the proper construction of the gas royalty provisions before us. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938).

Royalty is defined as the landowner's share of production, free of expenses of production. Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121-22 (Tex. Sup. Ct. 1997). Absent language in a contractual agreement to the contrary, royalty is subject to costs incurred after production, e.g., gathering taxes, costs of rendering product marketable, transportation costs. Id. at 131; Martin v. Glass, 571 F.Supp. 1406, 1413-1414 (N.D. Tex. 1983) (cited with approval in Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118 (Tex. Sup. Ct. 1996)); Texas Oil & Gas Corp. v. Hagen, 683 S.W.2d 24, 28 (Tex. App. 1984), judgment set aside, 760 S.W.2d 960 (Tex. 1988); See generally Le Cuno Oil v. Smith, 306 S.W.2d 190 (Tex. Civ. App. 1957); WILLIAMS & MYERS, MANUAL OF OIL & GAS TERMS 959 (11ed. 2000).

The royalty provisions in the Ramming lease call for payment to be made based on the "net proceeds from sale at the mouth of the well" and based on the "market value at the well." The phrase "net proceeds" is by definition the sum remaining from gross proceeds of sale minus payment of expenses. Martin, 571 F.Supp. at 1411. Therefore, it follows that net proceeds from the mouth of the well allows for deduction of expenses prior to payment of royalty. Id. A royalty clause based on net proceeds should be interpreted as excluding costs incurred prior to production, but "costs incurred subsequent to production (those necessary to render the gas marketable) are to be borne on a pro rata basis between operating and nonoperating interests." Id. at 1411-1412.

"Market value at the well" is an established term in oil and gas lexicon. Heritage, 939 S.W.2d at 122. There are two methods used to determine "market value at the well". First, the most desired method is comparable sales, i.e. sales comparable in time, quality, quantity and availability of market

8

outlets.  Id.  The second method, used only when comparable sales are not available, is to subtract reasonable post-production marketing costs from the market value at the point of sale.  Id. Reasonable post-production costs include transporting the gas to the market and those expenses incurred to make the gas marketable.  Id.  In other words, "all increase in the ultimate sales value attributable to the expenses incurred in transporting and processing the commodity must be deducted ... because that is the way ... [to] arrive[s] at the value of the gas at the moment it escapes from the wellhead."  Martin, 571 F.Supp. at 1414 (citation omitted) (quoting Freeland v.  Sun Oil Co., 277 F.2d 154, 159 (5th Cir.  1960)). The plaintiff has the burden of proving "market value at the well." Heritage, 939 S.W.2d at 122.

The post-production charge in dispute is derived from a gas sales agreement under which the natural gas produced from the Ramming leases was sold.  The gas sales agreement was entered into in July 1997 by MidCon Gas Services, gas purchaser, and MC Panhandle, MidCon's subsidiary and producer/seller of gas.  At some point around that time, Occidental, parent of MidCon Gas, reorganized MC Panhandle so that MC Panhandle was no longer a subsidiary of MidCon Gas but was just an affiliated corporation.  Effective March 3, 1998, Chesapeake purchased all the stock of MC Panhandle from Occidental and succeeded MC Panhandle as seller under the 1997 gas sales agreement and as producer under the Ramming leases.  Beginning in April 1998, post-production gathering charges and transportation fees were deducted from the plaintiffs' share of the proceeds of gas sales made from the leases.  Chesapeake argues that they are not actually making these deductions but rather the deductions are made by their gas purchaser, MidCon Gas Services, pursuant

9

to the 1997 gas sales agreement. Chesapeake maintains their revenues are proportionately subject to the same deductions from their royalty for these post-production costs as are the Appellees.[3]

The plaintiffs contend[4] that the prior operators and sellers under the lease - including MC Panhandle and MidCon Gas - never deducted these post-production expenses from the plaintiffs' royalty payments. They argue that since sales were made at the wellhead by Chesapeake to MidCon Gas, any expenses incurred after the gas changed hands at the wellhead were not to be deducted from the royalty owners' share. They maintain that the gathering and transportation charges being deducted are post-wellhead charges and therefore not properly chargeable against their royalties.

The district court ruled that the deduction of post-wellhead gathering and transportation fees and expenses by Chesapeake constituted a breach of the royalty clause of the Ramming leases. Specifically, the court held that the 1997 Gas Sales and Purchase Agreement, which sets out the charges, was a sham transaction that does not provide a proper basis for calculation of royalties.

The district court relied on Texas Oil & Gas Corp. v. Hagen in finding that a sham transaction occurred in this case. 683 S.W.2d 24. In Texas Oil, the defendant executed a gas purchase agreement with its wholly owned subsidiary which was the basis for the gas sales made on the leasehold. Id. at 28. The court found that the sale of the gas between the defendant and its subsidiary

---

[3] In fact, Chesapeake filed an action with the Federal Energy Regulatory Commission (FERC) in an attempt to have the post-production charge under the 1997 agreement declared improper. Chesapeake Panhandle L.P. v. Natural Gas Pipeline Company of America, et al., 102 F.E.R.C. 61,229 (2003). The FERC ruled that the charge under the 1997 agreement was not improper. Chesapeake also filed an action in the United States District Court for the Western District of Oklahoma seeking similar relief, but the matter was dismissed by the court. (Appellant's Brief at 9.)

[4] The Ramming plaintiffs did not file a brief in this appeal, we take their arguments from the Pls.'s Mot. for Partial Summ. J. and Plts.'s Reply to Def.'s Reply and Resp. to Plts.'s Mot. for Partial Summ. J. filed in the district court.

was a sham and created to deprive the plaintiffs of their royalty interests. As evidence of a sham transaction, the court looked to whether the wholly owned subsidiary was merely the alter ego of the defendant, its parent corporation. The court found that both companies have the same officers, directors, and office and field personnel; the defendant paid the payroll and directly controlled its subsidiary's expenses, income and capital; both companies filed consolidated income tax returns, filed a single SEC registration and financial statement; the defendant owned all of its subsidiary's stock; the defendant acted as its subsidiary's representative for gas sales agreements with other corporations; and all benefits earned by the subsidiary are direct benefits realized by the defendant. Id. Based on this evidence the court determined that the subsidiary was merely an alter ego for the defendant and the gas sale transaction involved in the case was a sham.

A thorough review of the arguments and the record in this case indicates that the district court erred in finding that the post-production charges were the result of a sham transaction. Here, there is no evidence to suggest that the relationship between MidCon Gas and MC Panhandle was such that the subsidiary was an alter ego i.e. simply a name or a conduit through which the parent conducts its business. In fact, there is no evidence in the record regarding the relationship between MidCon Gas and MC Panhandle at all, save for the fact that the latter was the former's subsidiary. As the court in Texas Oil emphasized, "the mere fact a subsidiary is wholly owned by the parent and there is an identity of management does not justify" finding that any transaction between the two is a sham. Id.

Moreover, drawing all reasonable inferences in favor of the non-moving party, Celotex Corp., 477 U.S. at 322, the gathering and transportation charges in this case are permissible post-production deductions. WILLIAMS & MYERS, MANUAL OF OIL & GAS TERMS 959 (11ed. 2000). The plaintiffs

11

contend that no further deductions should be made from the wellhead purchase price, but the evidence suggests that the purpose of the deductions was " to arrive at a wellhead purchase price." 102 F.E.R.C. 61,229, 61,678. Although under Texas law any post-production costs deducted from the market value must be reasonable, Heritage, 939 S.W.2d at 123, the defendants concede that the gathering charge was a high gathering component. Ramming v. Natural Gas Pipeline Co. of America, No. CA 2:01-CV-354-J, at 10 n.3 (N.D. Tex. Aug. 23, 2003). However, the burden is on the plaintiffs to prove market value, including the reasonableness or unreasonableness of any post-production deductions. See Heritage, 939 S.W.2d at 122. Here, the plaintiffs offer no evidence of comparable sales or evidence that the gathering charge deducted was not reasonable.

## CONCLUSION

We conclude that the district court erred as a matter of law in not entering the Offer of Judgment pursuant to the mandatory language of Rule 68, which explicitly states that "the clerk shall enter judgment." Therefore, we VACATE the judgment and REMAND for further proceedings not inconsistent with this opinion. Additionally, we hold that the district court erred in granting summary judgment for the Ramming plaintiffs as to the claim for improper post-production deductions from the royalty owners' payments. For the foregoing reasons, we REVERSE the summary judgment. VACATED, REVERSED, and REMANDED.

12