RENDERED:  FEBRUARY 27, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1219-ME

A.W.H.                                                                    APPELLANT


APPEAL FROM OLDHAM CIRCUIT COURT
v.        HONORABLE DOREEN S. GOODWIN, JUDGE
ACTION NO. 25-D-00088-001


P.H. ON BEHALF OF A.T.H., A
MINOR CHILD                                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

COMBS, JUDGE:  Appellant, A.W.H.[1] (Boyfriend), appeals from an Interpersonal

Order of Protection (IPO) entered against him. After our review, we affirm.

A.W.H. is the former boyfriend of A.T.H.  On August 11, 2025,

A.T.H.'s father, P.H. (Father), filed a petition for an order of protection on behalf

of A.T.H. as follows in relevant part:

---

[1] Because the initials are so close that they would inevitably cause confusion, we have utilized a combination of some initials and other designations in our discussion.

From January of 2024 through March 20, 2024, [Boyfriend] . . . when he was 18 years of age, engaged in unlawful acts with my daughter [A.T.H.], at a time when she was fifteen years of age, in violation of KRS[2] 510.120(1)(b),[3] a class A misdemeanor. [Boyfriend's] sexual acts with my daughter, who is now seventeen years of age, continued through February, 2024, when [A.T.H.] discovered that she is pregnant. Based on advice of counsel . . . this narrative is condensed to protect the ongoing investigation. However, [Boyfriend] has continued to intimidate and criminally harass [A.T.H.] and her family by threatening texts, calling and sending pictures intended to cause emotional distress, demanding [A.T.H.] severs [sic] ties with her father in order to be able to see her child once she is born. [Boyfriend] attempts almost daily to hack into [A.T.H.'s] social media accounts. The above, has endangered the health of [A.T.H.], and the baby, as indicated by the most recent OBGYN appointment.

On August 11, 2025, the family court appointed a Guardian *Ad Litem* (GAL) for A.T.H. and entered a Temporary Interpersonal Protective Order (TIPO) restraining Boyfriend from committing further acts of abuse or threats of abuse, from engaging in stalking or sexual assault, and from having any unauthorized contact with A.T.H. On that date, Boyfriend was served with summons scheduling

---

[2] Kentucky Revised Statutes.

[3] That citation appears to contain a typographical error. The statute in question is KRS 510.120(1)(a), which provides that "[a] person is guilty of sexual abuse in the second degree when . . . [h]e or she is at least eighteen (18) years old but less than twenty-one (21) years old and subjects another person who is less than sixteen (16) years old to sexual contact[.]" Under KRS 510.120(2), it is a defense in any prosecution under subsection (1)(a) that the lack of consent was due solely to the other person's incapacity by reason of being less than 16 years of age, that the other person was at least 14 years of age, and that the actor was less than five years older than the other person.

a hearing for August 15, 2025. The August 15, 2025, calendar order reflects that the hearing was passed to August 25, 2025, and that the TIPO was to remain in place.

On August 24, 2025, Boyfriend filed a motion to continue the August 25, 2025, hearing. The motion states that "[Boyfriend] . . . currently has an unborn child with [A.T.H.]" The *unverified* motion makes numerous allegations against Father that he had originally "filed allegations against [Boyfriend] in criminal court," which failed on their merits; that Father was currently being investigated by the Oldham County Police Department and county attorney's office on allegations of sexual abuse; and that CPS had also begun an investigation in June 2025. The motion states that "[t]hese allegations are lengthy and require a three (3) month continuance from the issuance of the Petition for Emergency Protective Order in order to issue discovery and investigate."

On August 25, 2025, the family court conducted a hearing on the petition. The parties were present with their respective counsel. Prior to commencement of the hearing, the court heard arguments on Boyfriend's pending motion to continue. Acknowledging that it had been filed at the "last minute," Boyfriend's counsel repeated the allegations of the motion and stated that separate criminal defense counsel had advised that Boyfriend should not testify due to his Asperger's syndrome. Father's counsel objected to the motion and explained that

the issues raised in the motion would have been clear to Boyfriend two weeks ago when the hearing was initially continued; Father's counsel also noted that Boyfriend's family had instigated the CPS investigation against Father, which had been closed out, and that the only pending criminal investigation was directed toward Boyfriend. The GAL also objected to the continuance. Boyfriend's counsel reiterated that his criminal defense attorney had advised that he not testify.

The family court explained that this was not the first time that it has had a domestic violence case accompanied by a criminal case, observing that the law is "pretty clear" that such a combination does not prevent a case from going forward. The court duly advised that it was Boyfriend's right to remain silent if he chose to do so in this proceeding and that his testimony could **not** be used in the criminal case -- except for impeachment purposes.[4] The family court thought that the request for a three-month continuance was "a little bit much," that there had been ample time to prepare for "today," and that everyone had already taken the time to be present on a second occasion. Therefore, the court denied Boyfriend's motion and proceeded with the hearing.

---

[4] "[A] respondent to an IPO petition, whether an adult or minor, must be correctly apprised that his testimony during the IPO hearing may only be used against him in a later criminal proceeding involving the same parties for the purposes of impeachment in accordance with KRS 456.070(6)." *Smith v. Doe*, 627 S.W.3d 903, 916 (Ky. 2021) (footnote omitted).

A.T.H. testified *in camera.* Counsel for both Father and Boyfriend were present. A.T.H., 17 years of age at this point, explained that she was 15 and that Boyfriend was 17 when they started dating in July of 2023. Boyfriend turned 18 in January 2024. They had "a pretty consistent sexual relationship" from January to March 2024. A.T.H. turned 16 in March 2024. A.T.H. testified that she felt that Boyfriend was pressuring her to have sex with him; that he would ask multiple times -- even after she said no. However, she acknowledged that the sexual contact was consensual.

With respect to social media, A.T.H. testified that Boyfriend hacked into her accounts "a lot" to see with whom she was talking and to monitor her when she was not with him. Boyfriend told A.T.H. he did so because he could not trust her. This hacking would happen "almost every day." Since August 11, 2025, when the IPO petition was filed, he tried to hack into her accounts three times. A.T.H. believed it was Boyfriend "because it's his phone and his location." A.T.H. explained that the "identifier" on her phone would say "iPhone 16 Pro and [that Boyfriend] admitted that it would say that if he hacked into me." She testified that Boyfriend was hacking into her TikTok, Facebook, and Snapchat accounts; she reiterated that Boyfriend **admitted** to hacking her phone.

A.T.H. further testified that her OBGYN had concerns because her baby's weight had dropped significantly due to stress. Asked what was going on at

that time which could have caused her stress, A.T.H. testified that she was fighting a lot with Boyfriend; that he was trying to convince her "to be back" in a relationship; he was "constantly" hacking into her phone; and that she felt that he was always watching her. A.T.H. testified that Boyfriend made her feel "not entirely safe." According to A.T.H., there was an incident when he had shown up at an event at the school of one of her male friends -- with whom he suspected her of carrying on conversations. There was no reason for Boyfriend to have gone there "other than to fight that guy."

In response to questioning by the family court, A.T.H. testified that she wants a protective order so that Boyfriend cannot have access to her -- specifically so that he cannot invade her social media. A.T.H. testified that she was "not really" afraid of his physically harming her and that he did not threaten to harm her physically. She described her fear as an emotional fear -- of emotional harm and stress for the baby. She feared that if something were not done to keep him from accessing her social media account, his harassment would continue and would cause further stress to her and the baby.[5]

---

[5] We note the congruence of facts highly similar to those of this case in a recent unpublished opinion of this Court. In *Boyd v. Wiesenberger*, No. 2021-CA-0595-ME, 2022 WL 815423, at *8 (Ky. App. Mar. 18, 2022), we held that a protective order issued to protect the mother of an unborn child serves to protect her unborn child as well.

Father testified about his concerns regarding Boyfriend's interactions with his daughter. According to Father, Boyfriend had caused A.T.H. a lot of emotional trauma. She suffered from anxiety, and there were multiple incidents of panic attacks. Father explained that A.T.H. had had a history of depression and two suicide attempts. She had been recovering for about a year before she met Boyfriend. It was a very rocky relationship resulting in A.T.H.'s missing school at times and jeopardizing the health of the baby as well. Father's concern was the undue stress that Boyfriend was causing his daughter -- "I don't even know if she is aware of the kind of damage he's done to her."

Father testified about the fragile nature of his daughter. He cited the physical ramifications of the emotional abuse flowing from Boyfriend's behavior. Father explained that there were instances of Boyfriend's knowledge of information that he would not have otherwise known -- but for his hacking of A.T.H.'s phone. When Boyfriend confronted A.T.H. about her conversations with other boys, she would "break down, and get emotional and have near panic attacks and cry uncontrollably." According to Father, the "mere thought" of Boyfriend's being around made A.T.H. go into an anxiety attack or panic mode. The result was so extreme that it affected A.T.H.'s unborn child -- noting that the child's weight had dropped when they went to the OBGYN. Father believed that A.T.H. greatly

feared Boyfriend -- and that without a protective order, Boyfriend would continue to do what he has done.

Boyfriend invoked his right to remain silent, but his father testified.

At conclusion of the hearing, the family court made the following findings:

> I am making the finding that dating violence and abuse has occurred and may again occur by a preponderance of the evidence. I am basing this on the fact that I visually watched this young lady, in her obvious fear of [Boyfriend]. Although she indicated that she wasn't afraid of physical harm, **I think it is physical harm when his conduct creates such an emotional reaction by her that it puts herself and the baby's health and well-being into danger. So I think there is a physical aspect to this** . . . . It is clear to me from the testimony I heard today that [Boyfriend] is aware of her issues. And she didn't raise any of those -- I was not aware of that even at the time she testified -- about her anxiety and her depression and things like that. So we also have a young lady that is very impactful when it comes to emotional things and the trauma that your actions have created. And it's your actions, young man, that have created this. I believe that there is hacking . . . going on and the magnitude of it is alarming.

(Emphasis added.)

On August 25, 2025, the family court entered an IPO on a Form AOC-275.3 effective until August 25, 2026, incorporating its oral findings therein. The court found "[f]or Petitioner against Respondent in that it was established, by a preponderance of the evidence that an act(s) of . . . dating violence and abuse . . .

-8-

has occurred and may again occur." The court ordered "[t]hat Respondent be restrained from committing further acts of abuse of threats of abuse, stalking or sexual assault . . . [and] be restrained from any unauthorized contact with Petitioner/Plaintiff or other protected person(s) named in this Order."

Boyfriend appeals. His first argument is that the family court abused its discretion in refusing to grant a continuance. To the extent that his arguments on appeal raise grounds not presented below, we do not consider them. "We have long endorsed a rule that specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal." *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (internal quotation marks and footnote omitted).

The "trial court has broad discretion in granting or denying a continuance; this court will not reverse for failure to grant a continuance absent an abuse of discretion." *Airrich, LLC v. Fortener Aviation, Inc.*, 489 S.W.3d 254, 257–58 (Ky. App. 2016).

> Whether a continuance is appropriate in a particular case depends upon the unique facts and circumstances of that case. Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice.

*Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001) (citations omitted). "Although *Snodgrass* was a criminal case, the same factors are applicable to analyze a civil motion for a continuance considering all relevant facts and circumstances." *Deleo v. Deleo*, 533 S.W.3d 211, 217 (Ky. App. 2017).

In the case before us, the family court issued a TIPO on August 11, 2025, and scheduled the hearing for August 15, 2025. On August 15, 2025, the hearing was passed to August 25, 2025. On August 24, 2025 -- the night before the hearing -- Boyfriend filed the subject motion to continue. The family court properly explained that his companion criminal case did not prevent the IPO case from going forward and that if he chose to testify, his testimony could not be used in the criminal case except for impeachment purposes. The court considered the request for a three-month continuance "a little bit much." The court noted that there had been ample time to prepare and that everyone involved had taken the time to appear a second time. Considering all relevant facts and circumstances, we find no abuse of discretion in the family court's denial of Boyfriend's motion for a continuance.

Next, Boyfriend contends that the "substantial weight of the evidence does not support the family court's finding of dating violence and abuse."

KRS Chapter 456 governs Civil Orders of Protection. KRS 456.020(1)(a) mandates that the chapter "be interpreted to . . . [a]llow victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[.]"

KRS 456.030(1) provides that a petition for an IPO may be filed by: "(a) A victim of dating violence and abuse; (b) A victim of stalking; (c) A victim of sexual assault; or (d) An adult on behalf of a victim who is a minor otherwise qualifying for relief under this subsection." Following a hearing, the court may issue an IPO if it "finds [by] a preponderance of the evidence that . . . [dating] violence and abuse, sexual assault, or stalking ha[s] occurred and may again occur . . . ."

> To satisfy the preponderance standard, the evidence believed by the fact-finder must show that the victim was more likely than not to have been a victim of domestic violence. On appeal, we are mindful of the trial court's opportunity to assess the credibility of the witnesses, and we will only disturb the lower court's finding of domestic violence if it was clearly erroneous.

*Hohman v. Dery*, 371 S.W.3d 780, 782 (Ky. App. 2012) (internal quotation marks and citations omitted). Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

In the case before us, the family court found that the element of "dating violence and abuse has occurred and may again occur." KRS 456.010(2) defines "Dating violence and abuse" as "Physical injury, serious physical injury, stalking, sexual assault, strangulation, **or the infliction of fear of imminent physical injury**, serious physical injury, sexual abuse, strangulation, or assault occurring between persons who are or have been in a dating relationship[.]" (Emphasis added.) Specifically, the family court found that "although [A.T.H.] indicated that she wasn't afraid of physical harm, I think it is physical harm when [Boyfriend's] conduct creates such an emotional reaction by her that it puts herself and the baby's health and well-being into danger."

A family court may draw reasonable inferences from the evidence, including the inference that the actor's conduct caused the victim to fear imminent physical injury. As our Court noted in *Hohman v. Dery*, *supra*, at 783,

> We reiterate that the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented. . . . Based on the record, we conclude **the evidence presented was sufficient for the court to reasonably infer that Joseph's conduct caused Jennifer to fear imminent physical injury**; accordingly, the court's finding of domestic violence was not clearly erroneous.

Under the unique facts and circumstances of this case, we conclude that the evidence presented was sufficient for the family court to reasonably infer that Boyfriend's conduct caused A.T.H. to fear imminent physical injury -- and to

-12-

suffer severe physical consequences as a direct result of the emotional trauma arising from Boyfriend's actions. Therefore, we conclude that the family court's finding of dating violence and abuse was not clearly erroneous. "The trial court heard the evidence and saw the witnesses. It is in a better position than the appellate court to evaluate the situation." *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967).

In his reply brief, Boyfriend argued that the only proof connecting the alleged emotional harm to anything physical was hearsay testimony about what a doctor had told A.T.H. concerning the weight loss of the baby. However, it does not appear that he objected to this testimony below. KRE[6] 103(a)(1). Additionally, he provides no specific reference to the record where the issue was preserved.[7] Moreover, he did not raise this issue as an argument in his initial brief;

---

[6] Kentucky Rules of Evidence.

[7] At page 19 of his Appellant's brief, Boyfriend makes a general statement that he preserved his argument (that the evidence did not support a finding of dating violence and abuse) for review "during his examination, cross-examination, objections and arguments at the evidentiary hearing." Boyfriend then directs us to footnote 78, which is simply a string citation to over a dozen different video segments. Kentucky Rule of Appellate Procedure (RAP) 32(A)(4) requires that Appellant's opening brief "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." As explained in *Gasaway v. Commonwealth*, 671 S.W.3d 298, 310 (Ky. 2023) (footnote omitted):

> We have strictly mandated compliance with this rule since its inception under the prior Kentucky Rules of Civil Procedure [(CR)]. *Skaggs v. Assad, By & Through Assad*, 712 S.W.2d 947, 950 (Ky. 1986) (citing CR 76.12(4)(c)(iv)) ("It goes without

thus, the issue is not properly before us. *Seeger Enterprises, Inc. v. Town & Country Bank and Tr. Company*, 518 S.W.3d 791, 796 (Ky. App. 2017) (Where appellant did not raise issue in his initial brief, he was not permitted to raise the issue for the first time in his reply brief).

We consider any remaining issues which we have not addressed to be unpreserved or without merit.

We affirm the decision of the Oldham Family Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Gregory Troutman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Sean P. Paris
La Grange, Kentucky

saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court.").